UNITED STATES, Appellee

v

WILLIAM H. RENER, Master Sergeant,
U. S. Air Force, Appellant

17 USCMA 65, 37 CMR 329

*Lieutenant Colonel Milton E. Kosa* argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph Buchta.*

*Lieutenant Colonel Thomas J. Connolly* argued the cause for Appellee, United States. With him on the brief were *Colonel Emanuel Lewis* and *Colonel James R. Thorn.*

## Opinion of the Court

KILDAY, Judge:

Appellant was arraigned before a general court-martial convened at Myrtle Beach Air Force Base, South Carolina, charged with adultery, unlawful cohabitation, presenting a false claim, and communicating a threat, in violation of Articles 134, 132, and 127, Uniform Code of Military Justice, 10 USC §§ 934, 932, and 927, respectively. He was found not guilty of the threat offense but guilty of the other charges and specifications, and sentenced to a bad-conduct discharge, confinement at hard labor for six months, and reduction to the grade of Airman Basic. Intermediate reviewing authorities approved the findings and sentence, and we granted review to determine whether the law officer erred to the prejudice of the appellant in overruling the defense objection to the testimony of appellant's wife.

As its initial witness in this prosecution, the Government presented one Theresa Wise Rener who, in response to a query as to her relation to the accused, stated, "I am his wife." At this point defense counsel objected to her testimony on the ground of spousal privilege, and in an out-of-court hearing argued that under our decision in United States v Massey, 15 USCMA 274, 35 CMR 246, the wife, while a *competent* witness against her husband, may not testify over his objection unless one or more of the charged offenses involves a direct injury to her person or property. Inasmuch as the charged of-

fenses did not fall within this category, counsel contended that he was, on behalf of the accused, invoking the testimonial privilege.

The Government averred that in United States v Leach, 7 USCMA 388, 22 CMR 178, this Court held that wrongful cohabitation and adultery were injurious to the wife to the extent that she could testify over the objection of her husband, and since we did not specifically overrule *Leach* in our decision in *Massey,* the rule laid down in the former case is still controlling. With reference to the defense objection, Government counsel agreed it should be sustained insofar as the false claim and threat charges were concerned.

The law officer overruled counsel's objection to the testimony of Mrs. Rener. He also stated, however, "Should her testimony touch on the charges involving Charge II [false claim] and the Additional Charge [threat] the court will be instructed to disregard the testimony with respect to those offenses and her testimony can only be considered as to the offenses listed in Charge I [adultery and unlawful cohabitation]."

Thereafter Mrs. Rener testified as to the date and place of their marriage, the number and names of their children, and the fact that she last resided with the appellant as husband and wife at Hampton, Virginia, in September 1965.[1]

We agree with defense counsel's as-

---

[1] Since the false claim charge involved the presentation, on or about March 10, 1966, for approval and payment, of a claim for dislocation allowance and dependent's travel for moving his family from Hampton, Virginia, to Myrtle Beach Air Force Base, South Carolina, on February 27, 1966, this

sertion that our opinion in United States v Massey, supra, is ■■■■■ ■ applicable here. There, in an exhaustive analysis of judicial decisions (both State and Federal, including the Supreme Court) regarding the applicability of the husband-wife privilege, we stated:

"These authorities, consisting as they do of the distilled reason and experience of many years in many jurisdictions, convince us that the proper approach to consideration of whether an offense charged against one spouse injures the other *depends not upon the outrage to her sensibilities or a violation of the marital bonds, but upon some direct connection with her person or property.* Almost any crime by one of the spouses can be said to affect the nature and status of the regard of the parties to the marriage one for the other. Cf. Bassett v United States, 137 US 496, 34 L ed 762, 11 S Ct 165 (1890). But if the exception to the privilege is not limited to a direct invasion of the wife's rights, the rule will soon be judicially eliminated. Cf. Hawkins v United States . . . [358 US 74, 3 L ed 2d 125, 79 S Ct 136 (1958)]; United States v Parker . . . [13 USCMA 579, 33 CMR 111]." [Emphasis supplied; United States v Massey, supra, at page 282.]

Indeed, we had previously held that even where the wife was the recipient of physical abuse, that is, the *victim* in a charge of four specifications of assault and battery, the privilege could be invoked and she could not be compelled, over her objection, to testify against her husband. United States v Moore, 14 USCMA 635, 34 CMR 415. As we noted in Moore, at page 641, quoting from Hawkins v United States, supra:

"'. . . The basic reason the law has refused to pit wife against husband or husband against wife in a trial where life or liberty is at stake

was a belief that such a policy was necessary to *foster family peace, not only for the benefit of husband, wife and children, but for the benefit of the public as well.* Such a belief has never been unreasonable and is not now.'" [Emphasis supplied.]

In the case at bar, the appellant's wife testified for him in mitigation at her own request. While acknowledging that she was not at that time prepared to say whether they would reconcile,[2] she personally accepted responsibility for his then current predicament. She felt that she "would like to write off the last two years. I feel now as I did two years ago about him." It does not appear that this "marriage is necessarily a failure or so unstable that enforcement of the public policy for its preservation is no longer justified." United States v Moore, supra, at page 642.

The short answer to the Government's contention that the *Leach* decision controls in this case and that a party-spouse may not invoke the testimonial privilege in a prosecution for adultery and unlawful cohabitation, on the ground that the witness-spouse is an injured party, is to repeat a portion of the above-quoted language from *Massey:*

". . . whether an offense charged against one spouse injures the other depends not upon the outrage to her sensibilities or a violation of the marital bonds, but upon some direct connection with her person or property." [*Ibid.*, at page 282.]

If carnal knowledge, the offense charged in *Massey*, even when incestuous, is not a direct injury to the witness-spouse, can it be any longer maintained that adultery and unlawful cohabitation are such an injury, since they all involve, primarily, "a violation of the marital bonds." See also Underhill, A Treatise on the Law of Criminal Evidence, 5th ed, § 732.

---

latter testimony assumes an importance far beyond its initially apparent meaning.

[2] In his rebuttal to the post-trial review, the appellant asserted that, "[w]e

have since had a reconciliation and plan to continue as a family despite any handicaps that may be imposed by this court-martial."

We hold, therefore, that the law officer erred in overruling defense counsel's objection to the testimony of appellant's wife.

The Government urges, in the alternative, that the appellant was in no way prejudiced by his wife's testimony; that it was limited to evidence of the marital relationship, was material only to the offense of adultery, and was merely cumulative of other evidence thereon. Furthermore, the Government contends, since the court was instructed as to the limited nature of her testimony and inasmuch as her testimony did not provide any material evidence as to the specific acts involved in the offenses charged, it did not contribute in any substantial way to the findings of guilt.

As noted above, in the out-of-court hearing on the admissibility of the wife's testimony, the law officer limited the area of inquiry to that envisaged within the charge of adultery and unlawful cohabitation. The witness-spouse, however, in reply to a direct inquiry by trial counsel, told the members of the court that she last lived with the appellant as husband and wife in September 1965, at Hampton, Virginia.

The Government acknowledges that while neither counsel at trial nor the law officer construed her testimony as relating to the false claim charge, since none of them invoked the limiting instruction that the law officer declared he would give if such occurred, the court members required clarification as to the nature of that testimony. Subsequent to the accused's testimony as to the false claim, to which he limited himself and wherein he related the fact of travel, a husband-wife argument after arrival, and her return to Hampton without unpacking the luggage, the following colloquy took place:

"LT COL MAFFETT: Where is Mrs. Rener? Can't she testify to that.

"LO: She cannot be required to testify to that.

"CAPT BEATY: May the court request any witnesses that haven't yet been presented by either the Government or the Defense?

"LO: Yes, you may.

"CAPT BEATY: I will explain what my question is. Sgt. Rener testified that one of the Clerks in Personnel Travel Section told him that he evidently was qualified and complied with the regulations, et cetera, et cetera, to receive this reimbursement he presented a claim for. I would kinda like to question this clerk. And you said that Mrs. Rener could not testify against her husband. She said it was in September, 1965, that she lived together with him.

"LO: That was in connection with the charges of unlawful cohabitation and adultery. I instructed the court at that time they could not consider her testimony in any way on the issue of whether or not there was a fraudulent claim or whether [sic] not there was an extortion charge.

"MAJOR SCHMIDT: That cannot be pursued further on account of the wife?

"LO: That is correct."

At least three of the court members were interested, in one degree or another, in eliciting further testimony from the appellant's wife on the issue of the false claim for travel. One of them specifically recalled, and by his statement reminded the others, that according to her testimony she last resided with Sergeant Rener as husband and wife some five to six months prior to the date of the alleged travel. In addition, trial counsel, in his opening remarks in argument by way of recalling the testimony on the adultery and unlawful cohabitation charges, reiterated this specific item of testimony.

In this manner, the statement of the wife on the fact and date of their marital separation, was given a place of prominence far beyond its original recitation.

Whether limiting instructions are effective to overcome the harmful consequences of inadmissible evidence depends upon the circumstances of the individual case. United States v Bat-

tista, 14 USCMA 70, 73, 33 CMR 282. There is no hard and fast rule in any particular case, but the general rule is that an accused must be accorded a fair trial. United States v Shepherd, 9 USCMA 90, 25 CMR 352. In light of the fact that, as we have held, all of the wife's testimony was inadmissible, we cannot say that the court was uninfluenced by this particular statement in its consideration of the charge of false claim. United States v Battista and United States v Shepherd, both supra. Reversal of the appellant's conviction for false claim is required.

Eliminating, as we must, the testimony of the appellant's wife as to the fact of their marriage, the only evidence in this record pertaining thereto is contained in the appellant's testimony and in Prosecution Exhibit three, the alleged false claim. But the appellant's testimony cannot be considered in connection with the charge of adultery for, as noted, he limited his testimony to only the false claim. Left then is the Government's exhibit. Utilized as part of the proof as to one offense, and allegedly false at least in part, can it now be considered as proof of an element of a different offense?

In a prosecution for adultery, "it is now well settled that the marriage of the accused may be proved by his admissions, oral or in writing; but his statement that he is married, to be admissible, must have been made voluntarily and with deliberation." Underhill, A Treatise on the Law of Criminal Evidence, 5th ed, § 733. When Prosecution Exhibit three was offered into evidence, defense counsel objected to its admission on the ground only that it was not the original but a copy and therefore did not comply with the best evidence rule. His objection was overruled and the document was admitted as an official record maintained by the Travel Unit of the Accounting and Finance Office, Myrtle Beach Air Force Base, South Carolina.

Official documents are considered an exception to the hearsay rule. United States v Masusock, 1 USCMA 32, 1 CMR 32. They are, generally, admissible to establish the truth of the matters related therein. Duly authenticated extract copies (in this case the Government produced a certified copy of the original) are admissible as duplicate originals. United States v Parlier, 1 USCMA 433, 4 CMR 25. Since the document was properly admitted and the appellant in his testimony acknowledged preparing the original of the document, it can be presumed that he did so voluntarily and with deliberation. But because of the limited purpose for which his testimony was given, his acknowledgment cannot be considered with reference to the charge of adultery. The Government's document must stand alone.

It was not offered as part of the proof of adultery, counsel at trial relying solely upon the testimony of the witness-spouse. But in its brief before this Court, counsel now allege that the existence of the marriage was never in dispute. It points to the wife's testimony *and to the contents of the claim represented by Prosecution Exhibit three* to prove that Theresa J. Rener, and not the alleged paramour, was the wife of the appellant. We are confident, however, that the members of the court gave little or no consideration to this latter facet of the evidence when it voted to convict the, appellant of the charge of adultery, for with the wife's testimony before them they would have little reason to look to other evidence for the resolution of such an important issue, absent an instruction thereon.

A trial becomes unfair if evidence accepted for one purpose may be used by an appellate court as though admitted for a different purpose, unavowed and unsuspected. Such, at all events, is the result when the purpose in reserve is so obscure and artificial that it would be unlikely to occur to the minds of uninstructed court members; and even if it did, would be swallowed up and lost in the one that was disclosed. Cf. Shepard v United

States, 290 US 96, 78 L ed 196, 54 S Ct 22 (1933).

In essence, then, we find no meaningful submission of evidence that the appellant is a married man, an essential element of the charge of adultery. Accordingly, his conviction thereon is also reversed.

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Air Force. The board of review may affirm the findings of guilty of unlawful cohabitation and reassess the sentence accordingly or a rehearing may be ordered.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

Rules of evidence promulgated by the Manual for Courts-Martial, United States, 1951, have the "force of law." Unfortunately, it is not always clear whether the Manual intended to promulgate a particular rule of evidence or merely explicated the rule as it then prevailed in civilian jurisdictions. See United States v Smith, 13 USCMA 105, 32 CMR 105. So far as the privilege of one spouse to testify against another is concerned, this Court unanimously treated the Manual provision as promulgating a "rule" for courts-martial, rather than merely commenting on the rule obtaining in American criminal courts. United States v Leach, 7 USCMA 388, 22 CMR 178. I am still of that opinion; and nothing in any case before this one has directly rejected this interpretation of the Manual provision.

The Manual provides that the accused's privilege to object to testimony by his spouse "does not exist" if the spouse is "injured by the offense with which . . . [he] is charged." It enumerates specific offenses as to which the privilege does not exist. One of these is unlawful cohabitation. Manual for Courts-Martial, supra, paragraph 148e, page 277. Whether other offenses are also included need not detain me. See my dissent in United States v Massey, 15 USCMA 274, 35 CMR 246; United States v Leach, supra, concurring opinion, Judge Ferguson. Since the accused was charged with unlawful cohabitation, he could not properly object to testimony by Mrs. Rener as to that offense.

In my opinion, the material parts of Mrs. Rener's testimony were all relevant to the unlawful cohabitation offense. The specification alleged that the woman with whom the accused cohabitated was not his wife. Mrs. Rener testified *she* was the accused's wife and that she lived together with him as husband and wife until a date previous to that alleged in the specification. I conclude, therefore, that the law officer properly admitted her testimony, and properly instructed the court-martial not to consider the testimony in connection with the false claim offense. At least as to the unlawful cohabitation offense, the findings of guilty are, therefore, unimpeachable.

The majority contend that, regardless of the law officer's specific instructions forbidding consideration of Mrs. Rener's testimony in connection with the false claim offense, the conviction therefor must be reversed because they "cannot say that the court was uninfluenced" by her testimony in its deliberations on the findings. I disagree with their conclusions, as to the futility of the law officer's instruction and the pernicious effect of Mrs. Rener's testimony, for the following reasons:

(1) If there was any error in Mrs. Rener's testimony as to the fact of her marriage to the accused, there was no resulting prejudice because the accused judicially admitted she was his wife.

(2) The evidence overwhelmingly indicates that Mrs. Rener and the children did not accompany the accused, as he represented in the travel claim, because they were at their home in Hampton, Virginia, while the accused was continuously in the company of his alleged paramour at Laurinburg, North Carolina, and Myrtle Beach, South Carolina. Hence, Mrs. Rener's testimony that she "last live[d] together . . . as husband and wife" with the accused

**71**

in Hampton in September 1965, is unimportant.

(3) Assuming Mrs. Rener's testimony had some significance, the law officer twice directed the court members they could not consider it in connection with the false claim offense. The story told by the accused about transporting his wife and children from Hampton to Myrtle Beach and his unsuccessful effort to "patch . . . up" his relationship with his wife does not even hint at a "living together" as husband and wife during the brief period of the alleged trip. Consequently, Mrs. Rener's testimony is not so inconsistent with the accused's as to justify the conclusion it was a vital factor in the case and probably induced the court members to disregard the law officer's instructions. Much more important in that connection, is the fact Mrs. Rener was the one person who could verify or disprove the accused's story. She was there in the courtroom area; she could not be called by the Government to testify against the accused, but she could be called by him to testify in his favor. Mrs. Rener, therefore, was "peculiarly available" as a witness for the accused, but he did not call her. His failure to do so alone discredits his testimony to the point of unbelievability. Bisno v United States, 299 F2d 711 (CA 9th Cir) (1961), certiorari denied, 370 US 952, 8 L ed 2d 818, 82 S Ct 1602 (1962); McClanahan v United States, 230 F2d 919 (CA 5th Cir) (1956).

I would affirm the decision of the board of review.