UNITED STATES, Appellee,

v.

Robert A. PASTOR, Specialist Five, U. S. Army, Appellant.

No. 34,850.

CM 434722.

U. S. Court of Military Appeals.

April 21, 1980.

For Appellant: *Captain Charles E. Trant* (argued); *Colonel Robert B. Clarke, Major Benjamin A. Sims, Captain D. David Hostler, Captain Michael P. La Haye* (on brief); *Colonel Edward S. Adamkewicz, Jr., Lieutenant Colonel John R. Thornock, Lieutenant Colonel John F. Lymburner, Major Elliot J. Clark, Jr.*

For Appellee: *Captain Harry J. Gruchala* (argued); *Colonel Thomas H. Davis, Lieutenant Colonel R. R. Boller, Major Steven M. Werner, Captain Glen D. Lause* (on brief).

*Opinion*

COOK, Judge:

A general court-martial with members convicted the accused of indecent sexual acts with his stepdaughter, Jackie. We conclude that the trial judge erroneously denied a defense motion for a mistrial, and we set aside the conviction.

 Declaration of a mistrial "is a drastic remedy" and should be granted only if manifestly necessary "'to preserve the ends of . . . justice.'" *United States v. Jeanbaptiste*, 5 M.J. 374, 376 (C.M.A. 1978). A ruling against an accused on a motion for a mistrial is reviewable on appeal. *United States v. Krokroskia*, 13 U.S. C.M.A. 371, 32 C.M.R. 371 (1962).

 The motion for a mistrial was predicated upon testimony by the accused's wife, who is the mother of Jackie and who testified for the Government. The first portion of her testimony alleged by defense counsel to be irreparably prejudicial consisted of two statements to her by Jackie that were disclosed in a rambling, narrative answer to one of a series of questions based upon a question by a court member during the Government's direct case. The second part of her testimony challenged by counsel was a portion of an answer to a question by the trial judge, during the Government's rebuttal case, in which Mrs. Pastor recounted a statement to her by Johnny, her young son.[1]

 Appellate government counsel concede that Johnny's statement was improperly before the court members, but they contend that Jackie's statements were properly admitted "to explain . . . how . . [Mrs. Pastor] first became aware of the alleged indecent acts." However, no ground of admissibility was advanced at trial except fresh complaint, and no instruction was given as to the purpose for which

the evidence could be considered. In *United States v. Rener*, 17 U.S.C.M.A. 65, 70, 37 C.M.R. 329, 334 (1967), this Court observed that "evidence accepted [at trial] for one purpose may [not] be used by an appellate" tribunal "as though admitted for a different purpose," especially when the newly advanced purpose "is so obscure and artificial" that it was unlikely to have been perceived by "uninstructed court members." The admissibility of Jackie's statements, therefore, must stand or fall on whether they were received as evidence of fresh complaint.

Mrs. Pastor's expected testimony was considered at an Article 39(a)[2] session about a week before the trial. At that time, to avoid serious risk that "the jury . . . [might be] prejudiced," defense counsel asked for a ruling as to the admissibility of statements by Jackie to both Mrs. Pastor and to her "best friend," Loretta. Both Loretta and Mrs. Pastor were called to testify as to the nature of the statements and the circumstances under which they were made.

After Loretta testified, and arguments by counsel on admissibility *vel non* were heard, the trial judge stated he would "not rule . . . until he had done some independent research." He further stated that "were . . . [he] to rule right now," he would hold the statements to be "inadmissible as fresh complaint." When Mrs. Pastor concluded her testimony, the following colloquy ensued:

MJ: Well, *the same thing*, my inclination right now would be that *this does constitute a fresh complaint*, but I will not rule until I do some further independent research.

DC: Your Honor, may I ask for further clarification. *You say it does not*?

---

1. Mrs. Pastor's testimony was replete with hearsay. In the same narrative statement in which she made the remarks that were the subject of the motion for a mistrial, she said that a "neighbor said Jackie told her something about my husband,"; and asked whether she knew about it, she replied, "[Y]eah, I don't really want to talk about it because I believe

her." *See United States v. Whitley*, 5 U.S.C. M.A. 786, 790–91, 19 C.M.R. 82, 86–7 (1955), for the risks inherent in allowing a witness to testify in narrative form rather than by way of a responsive answer to a precise question.

2. Uniform Code of Military Justice, 10 U.S.C. § 839(a).

MJ: I say that would be my inclination right now to rule that *it does constitute a fresh complaint*, but I'm going to reserve ruling on the matter until I do some further research. [Emphasis supplied.]

A second Article 39(a) session was held on the day of trial, before the court members assembled. After disposition of a government motion to amend one of the specifications, the trial judge turned to the admissibility of "the testimony of Loretta." He heard additional argument by counsel, then ruled as follows: "I adhere to my *original ruling. I will not admit* the testimony of Loretta." [Emphasis supplied.]

No reference was made at the hearing to the admissibility of the statements Jackie made to Mrs. Pastor. However, the judge asked trial counsel whether he was "going to call . . . [Mrs. Pastor] as a witness." Receiving an affirmative reply, the judge asked counsel what he expected "to elicit from her." Trial counsel informed him that he intended to have Mrs. Pastor testify to "several conversations with the accused" subsequent to the Article 32[3] investigation and to some recent "incriminating actions by the accused." He made no mention of the statements by Jackie that he had previously argued were admissible as evidence of fresh complaint. After hearing evidence on both subjects, the trial judge ruled that he would only allow part of the testimony as to accused's recent actions, which were construed by trial counsel as an attempt to have "the wife absent from trial today."

During a discussion of an alleged incriminating statement by the accused, defense counsel argued that if Mrs. Pastor's testimony was not as trial counsel had "characterized it," the jury would be "prejudiced." Trial counsel acknowledged that Mrs. Pastor was a "weak witness," and "from one minute to the next," he could not be sure what she would "say or not say."

3. UCMJ, 10 U.S.C. § 832.

4. One of the accused's children had gotten into a fight because of remarks made by another

Jackie was the Government's first witness on the merits. Mrs. Pastor followed. Her direct examination was brief, covering only her relationship to Jackie and the accused; a conversation with the accused after the Article 32 investigation; and that the accused had told her that "if he got the chance he would help" her move from their onpost apartment to a trailer park off post. The cross-examination consisted of five questions, one of which elicited the information that Mrs. Pastor conceived the "idea . . . to move off post."[4] A written question by a court member prompted a series. The last and crucial question in the series concerned Mrs. Pastor's awareness of the charges. She was asked how she "became aware of them." Her answer was a rambling, uninterrupted narrative of 337 words. Neither counsel nor the trial judge said anything about this testimony, which included the statements by Jackie.

After the defense rested its case, Mrs. Pastor was recalled as a government witness. Trial counsel asked only two questions. The first was disallowed; the second inquired into the nature of her sex life with the accused, and her answer was, "normal." Cross-examination by defense counsel consisted of four questions. Then the trial judge examined Mrs. Pastor as follows:

Q. . . . [W]hen Jackie told you he's been messing around with me, what did you assume she was referring to?

A. Well, it could be the only thing that he, that he was trying something with her.

Q. What do you mean? You took that to mean that he was sexually molesting her?

A. Yes.

Q. You didn't say a thing to her?

A. No, because right after she told me that Johnny told me he saw my husband with her.

Q. He said what?

A. He said he saw my husband with ----

youngster about the charges against the accused. Mrs. Pastor wanted to go to a "new neighborhood because of the embarrassment."

MJ: Wait a minute, don't say anything else.

Defense counsel requested a side-bar conference. The court members were excused, and the trial judge briefly questioned Mrs. Pastor as to what Johnny had said. At that point, defense counsel moved for a mistrial. He argued that Johnny's statement was prejudicial and that "the only way to cure" the error of its presentation to the court members "was a mistrial." The trial judge remarked that he thought that "if the court members state that they will put the matter out of their minds and give it no weight whatsoever . . . there's no reason for a mistrial." He denied the motion. Defense counsel then moved for a mistrial because of the prejudicial impact of the inadmissible testimony by Mrs. Pastor regarding the statements to her made by Jackie.

In his argument on the motion based on Mrs. Pastor's testimony, defense counsel called attention to the fact that the trial judge had previously "ruled" that testimony inadmissible. He contended that it was "immaterial" that the evidence had "come into the case from a question by counsel or a question by the court member." The trial judge responded as follows:

> Well, I realize that, that she—that all came out, but I'm not going to treat that as fresh complaint nor instruct that it is fresh complaint. The motion for a mistrial is denied.

The court members were recalled and the questioning of Mrs. Pastor continued. The first question by a court member related to one of Jackie's statements. The second question, by the same court member whose question during the Government's direct case had evoked the narrative statement by Mrs. Pastor, asked her "to clarify" the statement as to what Johnny said he saw.

Another side-bar conference was held. It was followed by an instruction to the court members that the statement "as to what Johnny saw . . . should not be before the court," and the court members "must completely put it out of their minds." The judge asked whether any court member

could not put it out of his mind. The record notes that no court member responded. Thereupon, the judge remarked that he "took it that each member will completely put that out of his mind and give it no further credit or any consideration whatsoever." Court member questioning of Mrs. Pastor resumed. The questions dealt with Jackie's statements and what "precisely" she had said. On that note Mrs. Pastor's examination ended.

■ An authenticated record imports true "recordation of . . . [events] at the trial." *United States v. Albright,* 9 U.S.C.M.A. 628, 632, 26 C.M.R. 408, 412 (1958). The record of the first Article 39(a) session indicates that the trial judge deferred ruling on the admissibility of Jackie's statements to both Loretta and Mrs. Pastor. The addendum as to his "inclination" regarding the admissibility of the statements to Mrs. Pastor is ambiguous, but the ambiguity does not change the fact that no ruling was made. The record of the second session shows an express ruling against the admissibility of Jackie's statements to Loretta, but the text of that ruling suggests the trial judge misapprehended the nature of his earlier action. As previously noted, he said he "adhere[d] to . . . [his] *original* ruling" and would "not admit the testimony of Loretta." [Emphasis supplied.]

Nothing in the record of the second Article 39(a) session suggests that the judge's ruling as to Loretta's testimony extended to Mrs. Pastor's testimony. However, the later actions and statements by the trial judge and counsel, that are summarized below, are comprehensible only as expressive of their understanding of a linkage between the testimony of Loretta and that of Mrs. Pastor, so that the ruling against the admissibility of Loretta's testimony extended to Mrs. Pastor's testimony:

(1) Toward the close of the second Article 39(a) session, defense counsel requested that, "at the proper time," the court members be instructed "on the lack of fresh complaint." The trial judge expressed a disinclination to give such in-

struction because he thought "the lack of fresh complaint can be explained."

(2) After the ruling that Loretta's testimony was inadmissible, the judge asked trial counsel whether he was going to call Mrs. Pastor as a witness. Counsel responded in the affirmative. The judge then asked what counsel expected "to elicit from her." Trial counsel answered that she would testify to a statement made to her by the accused which he perceived to be incriminating and to recent actions by the accused which he described as an attempt to keep Mrs. Pastor from appearing as a witness. He made no mention of the statements by Jackie.

(3) During the Government's direct case, trial counsel limited his direct examination of Mrs. Pastor to the matters he had specified in his reply to the judge's inquiry at the Article 39(a) session.

(4) During argument on the motion for a mistrial on the basis of Mrs. Pastor's testimony as to Jackie's statements, defense counsel reminded the trial judge that he had previously "ruled" the testimony was inadmissible. The trial judge did not challenge the correctness of this representation of fact; nor did trial counsel dispute it.

(5) Responding to defense counsel's argument that Jackie's statements were not rendered admissible because they had come into the case through an answer to a question by a court member, the trial judge acknowledged that he "realize[d] that." He assured defense counsel he would not "treat that as fresh complaint nor instruct that it is fresh complaint." Trial counsel neither objected nor requested the judge to reconsider the matter.

(6) The trial judge did not instruct as to the limited purpose for which fresh complaint is admissible. See para. 142c, Manual for Courts-Martial, United States, 1969 (Revised edition); DA Pam. 27–9, Military Judge's Guide, para. 9–24 (May 1969).

■ Aside from the effect of the matters summarized above on the presumption of the accuracy of the authenticated record, we are impelled to conclude that the trial judge's declaration that he would not treat Mrs. Pastor's testimony as to Jackie's statements as evidence of fresh complaint constituted a ruling that the testimony was inadmissible. Cf. United States v. Gaines, 17 U.S.C.M.A. 481, 38 C.M.R. 279 (1968).

■ We turn now to consider whether the inadmissible evidence was so prejudicial as to require declaration of a mistrial. At the first Article 39(a) session, defense counsel predicted that the case would "boil down . . . to a one on one situation," with Jackie pitted against the accused. That is indeed how the case evolved. In such a situation, corroborative evidence of guilt is likely to weigh heavily in the court members' deliberations on the findings of fact. See United States v. Pitasi, 20 U.S.C.M.A. 601, 44 C.M.R. 31 (1971).

■ Assessment of the probable impact of inadmissible evidence upon the court members is always difficult. Sometimes an instruction to disregard the inadmissible evidence is sufficient assurance that it will not be weighed against the accused; other times, the nature of the evidence is such that it is not likely to be erased from the minds of the court members. Each situation must be judged on its own facts. United States v. Krokroskia, supra at 373, 32 C.M.R. at 373. Here, the instruction to disregard went only to the testimony as to Johnny's statement; but even as to that statement, we believe the risk that the court members would not put it aside was too large to be tolerable.

Johnny's statement implied he had witnessed a specific act of misconduct. It was the only evidence independent of that provided by Jackie. The court member's interest in it is manifest from the fact that a question about it was the second question asked when Mrs. Pastor resumed her testimony, after the motion for a mistrial. The question was asked by the same court member who had asked the question that led to Mrs. Pastor's narrative statement which included Jackie's remarks to her.

We hold that the trial judge erred to accused's prejudice in denying the defense motion for a mistrial. Accordingly, the decision of the United States Army Court of Military Review is reversed, and the findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

EVERETT, Chief Judge, did not participate.

FLETCHER, Judge (concurring in the result):

My review of the record in this case indicates other prejudicial errors may have occurred during this trial so as to warrant reversal of the findings and sentence. However, in the interest of brevity, I will limit my discussion to the errors treated in Judge Cook's opinion.

In my mind, the testimony of the mother with regard to what Johnny said he saw and what Jackie said the appellant had done contained inadmissible hearsay. Paragraph 139a, Manual for Courts-Martial, United States, 1969 (Revised edition). Moreover, no proper foundation for its admission as an exception to the hearsay rule was laid at this court-martial (e. g. para. 142b, Manual, supra) nor was any instruction given by the military judge to the members as to its lawful use for a limited purpose. See para. 73a, Manual, supra. I find that the military judge also considered this testimony inadmissible for any purpose.[1] With respect to the testimony as to Johnny's extrajudicial statement, the judge struck the inadmissible hearsay from the record and admonished the members to completely disregard it. This was proper. With respect to the testimony as to Jackie's extrajudicial statement, he permitted it to remain in the record without instruction to the members concerning its use. This was error (see para. 139a, Manual, supra), even if the defense counsel reluctantly agreed to it. United States v. Thompson, 3 M.J. 168, 171 (C.M.A.1977); United States v. Graves, 1 M.J. 50, 53 (C.M.A.1975).

As indicated in Judge Cook's opinion, the critical decision to be made by the members in this case was whether to believe the appellant's testimony that the charged crimes did not occur or the alleged victim's testimony that they had occurred. In its admitted but uninstructed form, the members could consider this inadmissible hearsay testimony of the mother as independent substantive evidence that a crime in fact had occurred.[2] This was obviously prejudicial to the appellant. It also could be considered by the members[3] as corroborative evidence which bolstered the credibility of the alleged victim or her testimony. This also prejudiced the appellant. Finally, its introduction into the case prevented the appellant from effectively attacking the

1. Unlike the situation in United States v. Rener, 17 U.S.C.M.A. 65, 37 C.M.R. 329 (1967), it is not known for what purpose Jackie's statement was originally admitted at trial by the military judge. However, his failure to give any limiting instruction as to its use by the members (see para. 73a, Manual for Courts-Martial, United States, 1969 (Revised edition)), and his later ruling made clear that he considered this evidence inadmissible for any purpose. In addition to the portion of his remarks cited by Judge Cook, he continued, ". . . now do you want me to admonish the court members to completely put that out of their minds or do you want to let it go?"

2. The mere fact that the military judge did not treat his testimony as evidence of fresh complaint (see para. 142c, Manual, supra) does not make this testimony admissible on other grounds. In any event, the members could still use this testimony as incompetent evidence of the appellant's guilt, i. e., the appellant is guilty because the mother testified that Jackie said he was guilty. See para. 139a, Manual, supra.

3. The military judge stated that he would not treat this testimony as evidence of fresh complaint. See Munster and Larkin, Military Evidence, § 8.9 (2d 1977). This is of no benefit to the appellant because the primary concern of para. 142c, Manual, supra, is the admission of such testimony before the trier of fact, here the court members.

The military judge also stated that he would not instruct the members that this was evidence of fresh complaint. Cf. United States v. Thompson, 3 M.J. 168, 171 (C.M.A.1977). This was of marginal benefit to the appellant because the members were still free to treat this evidence for this purpose if they so desired.

credibility of the alleged victim for a failure to complain about the offense.[4]

This inadmissible hearsay testimony of the mother was constantly referred to at the trial by all the participants. In my opinion, to deny the mistrial, yet allow the inadmissible hearsay evidence to remain before these members not properly instructed as to its use, was prejudicial error sufficient to require reversal of this conviction. *See United States v. Rosser*, 6 M.J. 267, 271 (C.M.A.1979).

4. The military judge denied the defense request for an instruction on the lack of fresh complaint evidence in this case. *See* para. 142c, Manual, *supra*. *See also United States v. Goodman*, 13 U.S.C.M.A. 663, 33 C.M.R. 195 (1963); *cf. United States v. Flippen*, 16 U.S.C.M.A. 622, 37 C.M.R. 242 (1967). He also permitted the mother's testimony as to the daughter's statements to remain before the members. Under these circumstances, it is difficult to see how defense counsel could meaningfully attack the credibility of the alleged victim on these grounds before the members.