**UNITED STATES, Appellee,**

v.

**Charles E. MORRIS, Private First Class,
U. S. Army, Appellant.**

No. 40,174.

SPCM 15125.

U. S. Court of Military Appeals.

July 6, 1982.

The accused, a private first class, United States Army, was convicted by special court-martial on two charges of larceny, and he appealed. Upon granting review to consider the appropriateness of military judge's denial of a motion for mistrial, the Court of Military Appeals, Fletcher, J., held that evidence of the accused's pretrial statement to a South Korean security guard that prompted the accused's request for a mistrial was not obtained in violation of his warning rights under Article 31(b) of the Uniform Code of Military Justice, as the security guard, at the time he questioned the accused, had no suspicion that the accused had committed any offense, meaning that the accused was not then a suspect.

For Appellant: *Major Robert D. Ganstine* (argued); *Colonel Edward S. Adamkewicz, Jr., Captain John Lukjanowicz* (on brief); *Lieutenant Colonel John F. Lymburner, Major Raymond C. Ruppert.*

For Appellee: *Captain Thomas E. Booth* (argued); *Colonel R. R. Boller, Major Ted B. Borek, Major Paul G. Thomson* (on brief); *Captain Glenn D. Gillett, Captain Paul K. Cascio.*

Opinion

FLETCHER, Judge:

We granted (10 M.J. 334) review in the present case [1] to consider the appropriateness of this military judge's denial of a motion for mistrial. At trial appellant objected to an alleged pretrial admission of guilt to a South Korean security guard which was recited in the guard's testimony

---

1. Appellant was tried at Camp Casey, Republic of Korea, before a special court-martial composed of officer members and found guilty of two larceny charges, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. He was sentenced to a bad-conduct discharge, confinement at hard labor for 6 months, forfeiture of $298 pay per month for 6 months, and reduction to the grade of E-1. The convening authority approved the sentence and the court below affirmed.

at trial. Before us he urges that mistrial was the only sufficient remedy and that the military judge's various jury instructions to disregard this testimony were insufficient to obviate the court members' exposure to this supposedly inadmissible statement prejudicial to appellant. However, inasmuch as I have concluded that no Article 31(b)[2] warnings were required under the facts as presented and that the statement itself was admissible in evidence, no prejudice occurred to appellant, so his claims are without merit.

A summary recital of the facts elucidates the basis of my conclusion. On May 23, 1980, Private Chase loaned a combination radio/cassette/television unit to a Private Larkins, who fell asleep around 1:00 the following morning while watching it. Arising at 5:30 a. m., he discovered the unit was missing, and immediately reported that fact to appellant, the Charge of Quarters. In company with appellant, Larkins checked the barracks; during this search appellant repeatedly assured Larkins that he didn't have possession of this unit.

While in his barracks, appellant picked up an empty laundry bag and later Larkins observed him carrying the empty bag into a dayroom which they had not searched. Larkins then observed appellant leaving the dayroom with the bag, now filled "real tight" and he subsequently lost track of him.

Appellant testified that the laundry bag in question contained his "yobo bag" and that his departure from camp was to notify a Private Jones that he had received an emergency phone call. Although appellant's tour of duty did not end until 9:00 a. m., he left at about 5:30 a. m. Private Pearson, a Charge of Quarters' runner, testified no such call was received for Jones. Appellant claimed he went to Jones' "hootch" and could not find him. Jones, in contrast, testified that he was there all evening and did not see or hear appellant.

At the time of his departure from the camp, appellant was seen by Mr. Pak, a Korean security guard. Mr. Pak observed appellant carrying under his arm a laundry bag containing a fairly large rectangular object. This meeting was admitted by appellant. During the testimony of Mr. Pak, trial counsel asked him, "While you talked with [appellant], how was he acting?" Mr. Pak answered, "He told me that he was the CQ, and it was cassette." Appellant objected that no warnings pursuant to Article 31(b) had been given. The military judge denied a subsequent motion for a mistrial by appellant in which he had argued that the response was improper and that an instruction could not cure the error. There were no specific findings by the military judge as to whether the statement was illegally obtained; rather he assumed that Mr. Pak's answer was improper, and instructed the members to completely disregard it.

▄▄▄ We are confronted, thus, even before resolution of the granted issue, with the question of the admissibility of this evidence of appellant's pretrial statement. This need not detain me long, for the adequate evidentiary record conclusively demonstrates to me no suspicion on the part of Mr. Pak that appellant had committed any offense. The test to determine if a person is a suspect is whether, considering all facts and circumstances at the time of the interview, the government interrogator[3] believed or reasonably should have believed that the one interrogated committed an offense. *United States v. Anglin*, 18 U.S.C. M.A. 520, 523–24, 40 C.M.R. 232, 235–36 (1969). Only servicemembers suspected of a crime must be given Article 31(b) warnings before official interrogation. *United States v. Graham*, 21 U.S.C.M.A. 489, 45 C.M.R. 263 (1972); *United States v. Henry*, 21 U.S. C.M.A. 98, 44 C.M.R. 152 (1971). Thus, I conclude that evidence of appellant's pretrial statement that prompted the request

2. Uniform Code of Military Justice, 10 U.S.C. § 831(b).

3. We need not rule here whether Mr. Pak, as a contract security guard, qualified as a United States Government interrogator within the meaning of Article 31(b).

for mistrial was not obtained in violation of appellant's right under Article 31(b) of the Code.

This conclusion, therefore, makes it unnecessary for me to rule specifically on the validity of the adverse ruling on appellant's motion for a mistrial. The decision of the United States Army Court of Military Review is affirmed.

EVERETT, Chief Judge (concurring in the result):

When Private Larkins awoke one morning at about 5:30 a. m., he discovered his Hitachi Cassette Radio/Television was missing from his cubicle. He reported his loss to the appellant, the charge of quarters for the barracks, who joined him in an unsuccessful search of the barracks area. Thereafter, Morris was seen carrying a laundry bag which contained a rectangular object described as being about the same size as the cassette. He took this bag off-post with him to a nearby village, and when he returned a short time later the bag no longer contained the object. No one saw what was in the bag and the cassette was never found.

As part of its case the Government offered testimony of a Korean security guard that he had stopped appellant when he was leaving the camp and had asked what was in the bag. When he added that Morris had replied that the bag contained a cassette, the defense counsel promptly objected on the ground no warning was given before the statement and an Article 39(a)[1] session was held. There, trial counsel informed the judge that she had instructed the witness not to relate any statements by the accused. Defense counsel then advised the judge that in his view a cautionary instruction would be inadequate, so he moved for a mistrial. After a colloquy between counsel and the judge about whether the security guard was subject to Article 31[2] as an agent of the Government, trial counsel stated that since she had not been sure whether Article 31 warnings were required, she had tried to avoid the issue by not offering the statement. However, if a mistrial was contemplated, she requested time to check case law as to the necessity for such action. Defense counsel remarked that he and trial counsel "more or less agreed ... that these responses were improper." The judge then disposed of the matter by declining to rule specifically whether there was a duty to warn, but instead by ruling "based on the assumption that it's improper." He denied the motion for mistrial, and instead he opted for a cautionary instruction to the members that, since the "statement ... is inadmissible," they "must totally disregard" it and "not consider it in anyway in your deliberations."

By concluding that Article 31 warnings were unnecessary because appellant was not a suspect at the time the statement was made, the lead opinion avoids ruling on the denial of the motion for a mistrial. However, I must face that issue, for in my view the instruction by the military judge that the statement was not to be considered by the members constitutes the law of the case[3] and this Court is bound thereby. This view is supported by *United States v. Jiminez-Lopez*, 437 F.2d 791 (9th Cir. 1971), *cert. denied*, 402 U.S. 1010, 91 S.Ct. 2195, 29 L.Ed.2d 432 (1971). There, a federal judge held in a suppression hearing that answers to questions by customs officers must be suppressed because adequate warnings had

---

1. Uniform Code of Military Justice, 10 U.S.C. § 839(a).

2. UCMJ, 10 U.S.C. § 831.

3. "An instruction not objected ... to ... must for the purposes of the case be taken as the law. Right or wrong, the instruction becomes the law of the case and is binding upon the jury ... as well as on the court and counsel." 75 Am.Jur.2d, Trial § 927 (footnotes omitted). *See United States v. Holcomb*, 18

U.S.C.M.A. 202, 207, 39 C.M.R. 202, 207 (1969). *Cf. United States v. Tapio*, 634 F.2d 1092, 1094 (8th Cir. 1980). *See also United States v. Starr*, 1 M.J. 186 (C.M.A.1975), where we held that evidence which was erroneously excluded could not be considered on the merits, but the correctness of the exclusion could be considered to show "that other evidence which has been admitted is not illegally tainted." *Id.* at 190.

not been given. At trial, defense counsel asked a government witness on cross-examination if he had sent a package containing marihuana to fingerprint experts for examination. The witness answered in the negative this question, which went to appellant's knowledge of the presence of marihuana. On redirect, the Government over objection was allowed by a federal judge other than the one who sat at the suppression hearing to ask the witness the reason for his answer and to have the jury consider his response that his reason was "[b]ecause of a statement made by" defendant. All parties to the trial including the judge, considered that the response referred to the statement which was subject to the prior suppression order. The government's argument "that the pretrial order of suppression had been erroneously made" was treated by the Court as follows:

> The statement of the trial judge who was sitting at the suppression hearing, does indicate that he took a rather expansive view of the Miranda rights, as applied to the circumstances of these appellants. We think that that view was within the permissible judicial discretion of the judge who expressed it. But his suppression ruling was the law of the case, since it was not modified by the trial judge who sat at the trial, and we think it was error for the latter judge to permit the question and the answer given on re-direct examination which disclosed that there had been extrajudicial questioning and that some sort of an answer had been given.

*Id.* at 794. The Court, however, held "the error . . . was harmless, beyond any reasonable doubt" because there was "overwhelming evidence of his guilt." *Id.* at 794–95.

The doctrine of the law of the case is that "once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances." This serves to promote finality and efficient judicial administration. The trial judge who made the ruling may "reexamine and, if necessary, . . . alter a previous ruling in order to avoid the perpetuation of an error." The prior decision may also be reconsidered (1) by "a successor judge" if the original judge is "unavailable" in the same case; (2) if there is "new evidence"; (3) if "a supervening rule of law" is issued before the decision becomes final; or (4) if "the decision was clearly erroneous and would work a manifest injustice." [4]

Of these exceptions to the law-of-the-case doctrine, only the fourth seems pertinent. However, as in *Jiminez-Lopez*, the ruling "was within the permissible judicial discretion of the judge" (437 F.2d at 794), in view of counsel's statements to the judge strongly suggesting mutual agreement that the statement had been improperly obtained, and thus the ruling was not clearly erroneous.[5]

Even if the ruling had been clearly erroneous, there is "manifest injustice" to appellant in holding—long after the trial is over—that, contrary to the law of the case, his statement to the guard was admissible. Defense counsel never had the opportunity to cross-examine the witness about the alleged statement or the circumstances under which it was made.[6] His tactical decisions

---

**4.** *Hayman Cash Register Co. v. Sarokin,* 669 F.2d 162, 165, 169, 170 (3d Cir. 1982); *United States v. Horton,* 622 F.2d 144, 149 (5th Cir. 1980); *see Major v. Benton,* 647 F.2d 110, 112 (10th Cir. 1981); *United States v. McClain,* 593 F.2d 658, 664 (5th Cir. 1979), *cert. denied,* 444 U.S. 918, 100 S.Ct. 234, 62 L.Ed.2d 173 (1979).

**5.** *See United States v. Wellins,* 654 F.2d 550, 552 n.1 (9th Cir. 1981): Where "the Government admitted, for purposes of . . . appeal, . . . that the evidence . . . was properly suppressed," it would not be permitted to change that position later in the proceedings. *See also United States v. McDowell Contractors, Inc.,*

668 F.2d 256 (6th Cir. 1982); *United States v. Parrilla Bonilla,* 648 F.2d 1373, 1385–86 (1st Cir. 1981); *United States v. Hannah,* 584 F.2d 27, 30 (3d Cir. 1978); *United States v. Fuentes,* 563 F.2d 527, 531 (2d Cir. 1977). The situation would be entirely different if the evidence had been admitted, for it is settled that *denial* of a motion to suppress may be sustained on any theory whether considered by the district court or not. *United States v. Allen,* 629 F.2d 51, 57 (D.C.Cir.1980).

**6.** *See United States v. Kaiser,* 660 F.2d 724, 731 (9th Cir. 1981): Even though the testimony of a government witness was *erroneously* stricken

at trial were made in reliance on that ruling. He never had the opportunity to argue about the weight to be given to the statement. Since at trial the Government did not actively contest the defense position that the statement was inadmissible, and at no time requested the judge to reconsider his ruling, there is no "manifest injustice" to the Government in applying the law of the case.

Since I am bound by the trial judge's ruling that the statement was inadmissible, I now must inquire whether, without that evidence, the Government's case was legally sufficient and even if so, whether appellant was prejudiced by denial of a mistrial. Without reciting the evidence in detail, I am convinced that it was legally sufficient. As to prejudice from denial of the defense motion for mistrial, the test is whether the curative instruction from the judge was sufficient to purge any prejudice. *Cf. United States v. Williams*, 523 F.2d 1203, 1210 (5th Cir. 1975). Relying both on the sound discretion of the trial judge who heard the inadmissible statement and on my own independent review of the record, I am convinced that any prejudice was purged. Therefore, I join in affirming the decision of the Court of Military Review.

COOK, Judge (concurring in the result):

"A mistrial is 'a drastic remedy' . . . [and] cannot be declared for an insubstantial reason." *United States v. Simonds*, 15 U.S.C. M.A. 641, 644, 36 C.M.R. 139, 142 (1966); *see United States v. Jeanbaptiste*, 5 M.J. 374 (C.M.A.1978). It "should be granted only where the circumstances demonstrate 'a

manifest necessity to terminate the trial to preserve the ends of public justice.'" *Id.* at 376. The appropriateness of a mistrial is a matter resting within the discretion of the military judge, and his determination will not be reversed absent a clear abuse of discretion under the particular facts and circumstances of the case before him. *United States v. Rosser*, 6 M.J. 267 (C.M.A. 1979); *United States v. Jeanbaptiste, supra.* The effect of the probable impact of admissible evidence upon the triers of fact is always difficult to assess, and sometimes an instruction to disregard is sufficient to remedy the inadvertent introduction of such evidence. *United States v. Pastor*, 8 M.J. 280 (C.M.A.1980). In other instances, the nature of the inadmissible evidence is such that even an instruction to disregard is not enough to insure that the evidence is "erased from the minds of the court members." *Id.* at 284; *United States v. Richard*, 7 U.S.C.M.A. 46, 21 C.M.R. 172 (1956). "However, absent extraordinary circumstances, the receipt of improper evidence can be cured by remedies other than a mistrial, and the declaration of a mistrial is not required where its adverse impact can be neutralized by other means." *United States v. Jeanbaptiste, supra* at 376. Each case must be decided on its own facts. *United States v. Pastor, supra.*

Here the response of the security guard, obtained through an interpreter, was wholly unexpected by either counsel or the military judge. For reasons that are not clearly set forth, the military judge acquiesced in the wishes of trial counsel and excluded the evidence. Rejecting the defense motion

---

by the judge, the court rejected the Government's contention that the testimony could provide the necessary foundation for admission of certain exhibits. "The cross-examination of . . . [the witness], terminated when his testimony was stricken. To now permit his testimony to provide a foundation for exhibits would effectively deny the defendants their opportunity to cross-examine . . . [the witness], and that we cannot do." *See also United States v. Patrin*, 575 F.2d 708 (9th Cir. 1978). At trial "the government . . . disavowed any intent to rely upon the game protection category," but on appeal counsel sought to rely on that theory rather than the one presented at trial. *Id.* at

711. In rejecting the alternative theory, the Court of Appeals recognized that a change of theory could be permitted where "the party against whom the issue is raised . . . [was] not . . . prejudiced by it. Thus, if he might have tried his case differently either by developing new facts in response to or advancing distinct legal arguments against the issue, it should not be permitted to be raised for the first time on appeal." *Id.* at 712. Concluding that prejudice was possible from a change of theory, the Court held "that the government's case, in light of its concession during the trial, must stand or fall on" the theory used at trial. *Id.* at 713.

for a mistrial, the military judge chose to remedy the situation by directing the court members to disregard the statement. Examining the nature of the statement in light of its source and its possible impact on the guilt or innocence of the accused in terms of the other evidence of guilt in this case, I do not find it of such a character that an instruction to disregard was insufficient curative action. *Cf. United States v. Richard, supra.*

Appellate defense counsel contend that repeating the cautionary instructions twice "merely reinforced and refreshed the memories of the court members." However, the military judge should not be faulted for his care in trying to insure the understanding of the court members that the statement was not to be considered by them. We may presume that the court members complied with the instructions given by the military judge. *United States v. Ricketts,* 1 M.J. 78 (C.M.A.1975). In an analogous situation, the Supreme Court held that an instruction by the judge over defense objection that the defendant does not have to take the stand, and that if he chooses not to do so, no inference or presumption may be drawn against him was properly given. *Lakeside*

*v. Oregon,* 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978). There it was stated:

> It would be strange indeed to conclude that this cautionary instruction violates the very constitutional provision it is intended to protect.
>
> [However] . . . petitioner contends that in a trial such as this one . . . the giving of the cautionary instruction . . . is like "waving a red flag in front of the jury."
>
> The petitioner's argument would require indulgence in two very doubtful assumptions: First, that the jurors have not noticed that the defendant did not testify and will not, therefore, draw adverse inferences on their own; second, that the jurors will totally disregard the instruction, and affirmatively give weight to what they have been told not to consider at all. Federal constitutional law cannot rest on speculative assumptions so dubious as these.

*Id.* at 339–40, 98 S.Ct. at 1094–95 (footnotes omitted).

I join in affirming the decision of the United States Army Court of Military Review.