## UNITED STATES

v.

## Jason L. TAYLOR, Sergeant (E–5), U.S. Marine Corps.

### NMCCA 200202366.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 14 Dec. 2001.

Decided 18 Jan. 2006.

Lt J.L. Goldsmith, JAGC, USNR, Appellate Defense Counsel.

Lt Donald Palmer, JAGC, USNR, Appellate Government Counsel.

Before CARVER and WAGNER, Senior Judges, and FELTHAM, Appellate Military Judge.

CARVER, Senior Judge:

A military judge, sitting as a special court-martial, convicted the appellant, contrary to his pleas, of carnal knowledge and adultery with the same individual, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 934. The adjudged and approved sentence consists of a bad-conduct discharge, confinement for 4 months, forfeiture of $600.00 pay per month for 4 months, and reduction to pay grade E–1.

After considering the record of trial, the appellant's sole assignment of error that the military judge erred in ruling that the marital privilege did not apply, and the Government's response, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Facts

The appellant was convicted of both carnal knowledge and adultery on divers occasions with AM, a 15–year–old female. AM testified that she and the appellant first met at her trailer park in 1999 while the appellant was visiting her neighbors, Mr. and Mrs. W. AM testified that she and the appellant engaged in sexual intercourse some 40 times from November 1999 until early 2000, in various locations including his car, Mr. and Mrs. W's trailer home, a hotel, and her mother's trailer home. AM testified that, throughout the relationship, she knew the appellant was married and that his wife was in Idaho and that she told the appellant she was only 15 years old.

AM's mother testified that she worked long hours and did not know about the affair while it was ongoing. She testified that she knew and liked the appellant and treated him like a son. But in late 1999, she noticed that her daughter was developing feelings for the appellant. At that time, according to her testimony, AM's mother counseled the appellant that her daughter was enamored of him and because he was married and her daughter was underage, he should not be hanging around her every day. She also testified that she told the appellant she would "nail

his butt to the wall" if he ever touched her daughter. Record at 157. Nonetheless, according to the testimony of AM, the relationship continued until shortly before the appellant's wife returned from Idaho in April 2000.

The appellant's wife testified that she went back home to Idaho in August 1999 to finish high school and to wait for the appellant's assignment to base quarters at Camp Lejeune, North Carolina. She testified that she returned to Camp Lejeune in April 2000 after her husband was assigned to quarters. According to her testimony, she and the appellant talked on the phone nearly every day during her absence. The appellant's wife testified that, shortly after her return to Camp Lejeune, she and the appellant began experiencing marital problems, during which she confronted him about AM.

The military judge denied a defense motion in limine based on marital privilege to prevent the appellant's wife from testifying regarding the details of this conversation. The appellant's wife was permitted to testify that the appellant initially said that he and AM were just friends, but that he eventually admitted to her that he and AM had sexual intercourse on numerous occasions during a period of 6 or 7 months while his wife was in Idaho.

The appellant's wife further testified that several months after her husband's admission, she approached AM's mother about the affair. AM's mother testified that she then broached the subject with AM, who admitted the relationship.

The appellant testified that he and AM were only friends and that he never had sex with her. He also testified that, when his wife confronted him about AM, he repeatedly denied the accusations. The defense presented evidence of the appellant's character for truthfulness and good general and military character.

## Applicable Law

MILITARY RULE OF EVIDENCE 504(b)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.) provides that:

[a] person has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from disclos-

ing, any confidential communication made to the spouse of the person while they were husband and wife and not separated as provided by law.

Both parties orally stipulated at trial that the appellant's admission to his wife was a private, confidential communication not intended to be disclosed to third parties. Record at 51. However, the parties differ as to the applicability of the following exception: "There is no privilege ... [i]n proceedings in which one spouse is charged with a crime against the person or property of the other spouse ..." MIL. R. EVID. 504(c)(2). The Analysis of the Military Rules of Evidence, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), App. 22, at A22-40, discusses the exception as follows:

Rule 504(c)(2) prohibits application of the spousal privilege, ... when the circumstances specified in paragraph (2) are applicable. Subparagraphs (A) and (C) deal with anti-marital acts, *e.g.*, acts which are against the spouse and thus the marriage.

### Standard of Review

A military judge's decision to admit or exclude evidence is reviewed for an abuse of discretion. *United States v. McElhaney*, 54 M.J. 120, 132 (C.A.A.F.2000); *see United States v. Westmoreland*, 312 F.3d 302, 306 (7th Cir.2002)("We review the trial court's resolution of a marital privilege issue for an abuse of discretion."). Whether a communication is privileged is a mixed question of fact and law. *McElhaney*, 54 M.J. at 132 (citing *United States v. Napoleon*, 46 M.J. 279, 284 (C.A.A.F.1997)). We review a lower court's legal conclusions *de novo*, but we give a lower court's factual findings more deference, and will not reverse such findings unless they are clearly erroneous. *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F.1995).

*United States v. McCollum*, 58 M.J. 323, 335-36 (C.A.A.F.2003).

### Discussion

The sole question before us is whether adultery is a crime "against the person or property" of the other spouse. MIL. R. EVID.

504(c)(2)(a). If it is, the admissions made by the appellant to his wife are admissible as an exception to the marital privilege. If not, the military judge should have excluded that testimony as a privileged communication. We conclude that the military judge ruled correctly when he denied the appellant's motion in limine to suppress his admissions to his wife.

We find no military cases directly on point. The appellant relies primarily on the case of *United States v. Rener*, 37 C.M.R. 329, 1967 WL 4256 (C.M.A.1967) which interpreted the 1951 Manual for Courts–Martial provision regarding marital privilege held that:

> the proper approach to consideration of whether an offense charged against one spouse injures the other *depends not upon the outrage to her sensibilities or a violation of the marital bonds, but upon some direct connection with her person or property*. Almost any crime by one of the spouses can be said to affect the nature and status of the regard of the parties to the marriage one for the other. But if the exception to the privilege is not limited to a direct invasion of the wife's rights, the rule will soon be judicially eliminated.
>
> Indeed, we had previously held that even where the wife was the recipient of physical abuse, that is, the *victim* in a charge of four specifications of assault and battery, the privilege could be invoked and she could not be compelled, over her objection, to testify against her husband.

*Rener*, 37 C.M.R. at 332 (internal citations omitted). The marital privilege rule, however, was subsequently changed specifically to overrule both *Rener* and *United States v. Massey*, 35 C.M.R. 246, 1965 WL 4660 (C.M.A.1965). *See United States v. Menchaca*, 48 C.M.R. 538, 539–40, 1974 WL 13852 (C.M.A.1974). We note, however, that both *Massey* and *Menchaca* dealt with the child abuse exception to the marital privilege rule and are not dispositive as to whether adultery is also considered a crime against the person or property of the other spouse.

As noted above, the current spouse exception to the marital privilege rule, MIL. R. EVID. 504(c)(2), occurs when the appellant is charged with an offense "against the person or property" of the other spouse, whereas the exception that was effective when *Rener* was decided applied when the spouse was "injured" by the offense with which the appellant was charged. We find no military cases after *Rener* or after the change in the Manual regarding this exception to the marital privilege rule.

The Federal Rules of Evidence do not specifically include any privileges. Instead, in criminal cases, the privilege of a witness "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." FED.R.EVID. 501.

We did find several Federal and state cases that support the notion that adultery is an exception to the marital privilege rule. In an old case, the Supreme Court opined: "Adultery is an offense against the marriage relation and belongs to the class of subjects which each State controls in its own way." *Southern Surety Co. v. Oklahoma*, 241 U.S. 582, 586, 36 S.Ct. 692, 60 L.Ed. 1187 (1916)(holding that bail bond action does not make interpretation of privilege).

"The modern justification for this privilege against adverse spousal testimony is its perceived role in fostering the harmony and sanctity of the marriage relationship." *Trammel v. United States*, 445 U.S. 40, 44, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)(ending rule of spousal privilege that does not involve confidential marital communications). "By abandonment of the marital duties and privileges, such a husband has also abandoned any right to assert [the marital] privilege...." *United States v. Ryno*, 130 F.Supp. 685, 688 (S.D.Cal.1955).

The Arizona Supreme Court noted that, under Arizona law, "either spouse may ... be examined as a witness for or against the other in a prosecution for bigamy or adultery, committed by either spouse...." *State v. Whitaker*, 112 Ariz. 537, 544 P.2d 219, 222 (1975)(quoting Ariz.Rev.Stat. § 13–1802(1)(1975)). The Court of Criminal Appeals of Oklahoma opined that the exception to the privilege occurs when the offense impairs the conjugal relation:

The rule that the injury must amount to a physical wrong upon the person is too narrow; and the rule that any offense remotely or indirectly affecting domestic harmony comes within the exception is too broad. The better rule is that, when an offense directly attacks or directly and vitally impairs the conjugal relation, it comes within the exception to the statute that one shall not be a witness against the other except in a criminal prosecution for a crime committed one against the other.

*Cargill v. State,* 25 Okla.Crim. 314, 220 P. 64,67 (1923).

In the absence of direct case law on whether adultery is an offense against the spouse, we must interpret the current language in the Manual in light of the regulation, the case law, and our reason and experience. We are mindful that adultery requires, as an element, that the Government prove beyond a reasonable doubt that the misconduct is either prejudicial to good order and discipline or service-discrediting. But this terminal element does not assist us in determining whether the offense is also a crime "against" the spouse. All offenses specified in the Manual as Article 134(1) and (2) offenses require this element, but many of those offenses are nonetheless also offenses "against" a victim.

As this court recently noted in *United States v. Orellana,* 62 M.J. 595 (N.M.Ct. Crim.App.2005), while the primary purpose of the adultery statute under Article 134, UCMJ, 10 U.S.C. § 934, is to maintain good order and discipline within the service, it does "secondarily" foster "the fundamental social institution of marriage." *Id.,* 62 M.J. at 598. Adultery strikes directly at the institution of marriage. It often results in significant disruption to the lives of the two married persons and any children of the marriage. Further, we cannot ignore the many records of trial that we have reviewed which involve various crimes, including domestic violence, directly arising out of infidelity by one of the spouses. We are compelled to hold that adultery is a crime against the person of the other spouse. Thus, we hold that when one spouse is charged with adultery, the marital privilege does not apply to communications involving the adultery.

Assuming, *arguendo,* that the military judge erred when he allowed the appellant's wife to testify as to his admissions, we nonetheless deny relief. As noted above, the evidence of guilt was strong and compelling. Even without evidence of the admissions to his wife, the appellant's guilt was established beyond a reasonable doubt to our satisfaction through the testimony of AM and the corroborating testimony from AM's mother and the appellant's wife. We further find incredible the testimony of the appellant. Thus, if the military judge erred, we conclude that the error did not materially prejudice any substantial right of the appellant.

### Conclusion

Accordingly, the findings of guilty and the sentence, as approved by the convening authority, are affirmed.

Senior Judge WAGNER and Judge FELTHAM concur.