**UNITED STATES, Appellee,**

v.

**Specialist Four Michael D. LACY, SSN 505–88–9747, United States Army, Appellant.**

**CM 442218.**

U.S. Army Court of Military Review.

29 July 1983.

Captain William T. Wilson, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, and Captain David M. England, JAGC.

Captain Michael E. Pfau, JAGC, argued the cause for the appellee. With him on the brief were Lieutenant Colonel John T. Edwards, JAGC, and Captain Patrick M. Flachs, JAGC.

Before O'DONNELL, FOREMAN and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Judge:

Appellant was charged, *inter alia,* with the unpremeditated murder of his eleven-week-old daughter. Contrary to his plea, a court-martial composed of members convicted him of the lesser-included offense of involuntary manslaughter while perpetrating a battery, in violation of Article 119(b)(2), Uniform Code of Military Justice, 10 U.S.C. § 919(b)(2) (1976). His sentence, which was approved by the convening authority, provides for a bad-conduct discharge, confinement at hard labor for twelve months and forfeiture of $100.00 pay per month for six months.

Appellant contends the military judge erred by failing to suppress certain admissions and a confession which he claims were the products of an involuntary statement made by him during an interrogation by criminal investigators. In opposition, the government maintains that the objectionable statement was not involuntary and that, even if it was, it was not the producing cause of appellant's admissions and confession. At trial, the military judge ruled that the statement was involuntary and therefore inadmissible because it was not preceded by the necessary warnings and waiver of appellant's rights. He also ruled that, as the admissions and confession were not derived from the statement, they were admissible. We hold that the military judge's rulings were correct.

### I.

On Saturday evening, 20 December 1980, Special Agent Hinson of the Office of the Criminal Investigation Command (CID) was at the Nuernberg Army Hospital conducting an investigation unrelated to appellant's

case. Medical personnel working in the emergency room reported to Hinson that appellant's eleven-week-old daughter, Angela, had been treated for and subsequently died of head injuries incurred earlier that day. They also told Hinson that when appellant brought Angela in for treatment, he said she had sustained the injuries by falling from a couch onto a hard floor after he had left her unattended. On the basis of the information furnished by the medics as well as by his own viewing of Angela's injuries, Hinson concluded "that we might have something more than an accidental death." At trial, Hinson acknowledged that during the Article 32, Uniform Code of Military Justice, investigation he stated that "the bruising [of the child] was a little unusual, indicating possible foul play." Hinson conveyed his suspicions to Special Agent Gallimore, the CID agent charged with investigating the matter, by noting them in his preliminary investigation report and by discussing them with him on the morning of 22 December 1980.

Gallimore, an agent with more than twelve years of police experience, learned from Hinson that Angela Lacy's injuries included scratches and bruises of the body, a bruise over one eye and three bruises of the skull. The skull also appeared to have swelled. Gallimore then called Doctor Fossum, an Army pathologist, and discussed with him the possible causes of the child's death. Doctor Fossum told him about a medical study which found that of 300 infants who had fallen from a height of three feet or less, none had required hospitalization. Armed with this information, Gallimore contacted his superior, Agent Martin, and requested that necessary action be taken to "preserve" the child's body; notified appellant's unit to bring him to the CID office for an interview; requested Agent Flanders to seize the couch from which the child had allegedly fallen; and requested Agent Trosvig to obtain the child's medical records from the hospital.

Gallimore stated that his actions were motivated by a desire for thoroughness. He denied that he suspected appellant of having committed a crime. Because of this,

he did not give appellant a rights warning pursuant to Military Rule of Evidence 305(c) and (d) when he interviewed him at 1100 hours on 22 December. As a result, he obtained a statement in which appellant essentially repeated what he had previously told the medics concerning the cause of his daughter's death, i.e., that she had rolled off a couch and hit her head on the floor.

On 23 December 1980, Gallimore measured the couch and found it to be only fifteen inches high. Moreover, because an autopsy showed that Angela Lacy had suffered a severely fractured skull and fractured ribs, Doctor Fossum concluded that her injuries could not have resulted from a mere fall from a couch. He opined that appellant's version of what happened was "impossible."

On 24 December 1980, Gallimore again interviewed appellant. This time, he advised him of his rights, which appellant waived. When he informed appellant of Doctor Fossum's opinion, appellant asked to speak to his wife. After speaking with her for fifteen minutes, he executed another statement in which he admitted that his earlier statement was false; that he had tripped and fallen on the child as he was walking into the barracks; and that he did not tell the truth earlier because he was afraid his wife would leave him. Although Doctor Fossum said this story was plausible, Gallimore was directed by his superiors to continue investigating the matter.

On 30 December 1980, appellant consented to a polygraph examination. As the results were inconclusive, the examiner, with appellant's consent, scheduled a retest for the following day. In the interim, appellant took Gallimore to his barracks to view the place where he had allegedly fallen on Angela. While there, he stated that he was relieved Angela had died since he was uncertain that he was her father and that it had cast a shadow over his marriage. The second polygraph examination indicated that appellant was not telling the truth about how his child had died. Further interrogation elicited his confession in

which he admitted that he was angry at his wife for leaving Angela with him while she visited her friends. When the child began to cry, it compounded his anger and prompted him to hit her four or five times in the head with his hand to make her stop crying. The blows caused her to go into convulsions and, eventually, to die.

## II.

■ Initially, we hold that appellant's statement to Agent Gallimore on 22 December 1980 was involuntary because it was obtained without proper warnings as required by Military Rule of Evidence 305(c). Under that provision, a person required to give warnings under Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831, may not interrogate an accused or person suspected of an offense without informing him of the nature of the accusation; advising him he has the right to remain silent; and advising him that any statement made may be used as evidence against him in a trial by court-martial. The issue presented at trial and again on appeal is whether Agent Gallimore should have considered appellant a suspect within the meaning of the rule. We hold he should have.

"The test to determine if a person is a suspect is whether, considering all facts and circumstances at the time of the interview, the government interrogator believed or reasonably should have believed that the one interrogated committed an offense." *United States v. Morris,* 13 M.J. 297, 298 (C.M.A.1982) (footnote and citation omitted).

The record demonstrates there was more than ample evidence to focus the attention of Agent Gallimore, an experienced criminal investigator, on appellant as a possible perpetrator of a crime against his child. The severity of the injuries, the suspicions of medical personnel and Agent Hinson, and the expert opinion of Doctor Fossum as to the cause of death should have compelled the conclusion that accidental death was improbable. Moreover, notwithstanding Gallimore's assertion that he was only trying to be thorough, we find that his actions to preserve the child's body, obtain her medical records, seize the couch and to set up an interview with appellant reflect his recognition of appellant as a suspect. Therefore, he should have given appellant the required warnings.

## III.

■ We further hold that appellant's admissions of 24 and 30 December 1980 and his confession of 31 December 1980 were properly admitted into evidence. Appellant has contended that they should have been suppressed as they constitute derivative evidence impelled by his involuntary statement of 22 December 1980. *See* Mil.R.Evid. 304(a). In resolving this question, we recognize that the government has the burden of showing by a preponderance of the evidence that appellant's admissions and confession were "made voluntarily or that [they were] not obtained by use of the [prior] statement." Mil.R.Evid. 304(e)(3). Applying this standard, we find that the government has met its burden.

The principal evidentiary support for appellant's contention is his own self-serving testimony during the hearing on the suppression motion that he would not have incriminated himself but for his earlier, involuntary statement. The military judge, as the trier of fact, could have rejected appellant's testimony as not credible and we could defer to his judgment. However, we find a more compelling reason for determining that there was no taint. In substance, appellant's involuntary statement merely repeated what he had told the medics when he brought his child to them for treatment on 20 December 1980. His statement to the medics was not required to have been preceded by any rights warnings and was admissible against him. We are satisfied that the coercive influence of the information which appellant had previously made available to the CID had no effect on his subsequent admissions and confession. *United States v. Green,* 7 U.S.C.M.A. 539, 23 C.M.R. 3 (1957); *United States v. Bennett,* 7 U.S.C.M.A. 97, 21 C.M.R. 223 (1956).

We have also considered the remaining assignment of error and find it to be without merit.

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge O'DONNELL and Judge FOREMAN concur.