### UNITED STATES

v.

### Angel M. ORELLANA, Corporal (E–4), U.S. Marine Corps.

### NMCCA 200201634.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 28 Aug. 2001.

Decided 29 Nov. 2005.

596

LT M.J. Navarre, JAGC, USNR, Appellate Defense Counsel.

Maj Raymond Beal, USMC, Appellate Government Counsel.

Before CARVER, Senior Judge, WAGNER, and DIAZ, Appellate Military Judges.

DIAZ, Judge:

A military judge, sitting as a general court-martial, convicted the appellant, pursuant to his pleas, of conspiracy to commit adultery, false official statement, assault consummated by battery, obstructing justice, and three specifications of adultery, in violation of Articles 81, 107, 128, and 134, Uniform

1. The appellant did not forfeit the constitutional issue by failing to raise it at trial. *See United States v. Bart*, 61 M.J. 578, 581 (N.M.Ct.Crim. App.2005).

Code of Military Justice, 10 U.S.C. §§ 881, 907, 928, and 934. The military judge sentenced the appellant to confinement for 48 months, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence but, in accordance with the terms of the pretrial agreement, suspended all confinement in excess of 18 months and waived automatic forfeitures.

The appellant has raised two assignments of error. He first argues that his conviction for adultery under the first specification of Charge III is unconstitutional based on *Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003).[1] He next asserts that his plea to making a false official statement was improvident. We have carefully reviewed the record of trial, the appellant's assignments of error, the Government's response, and the appellant's reply. Following that review (and except as noted below), we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the appellant's substantial rights was committed. Arts. 59(a) and 66(c), 10 U.S.C. §§ 859(a) and 866(c), UCMJ. We specifically hold that *Lawrence v. Texas* does not bar the prosecution of adultery under the UCMJ.

### Background

The appellant admitted the following facts during the military judge's providence inquiry:

The appellant was a 23–year–old married Marine noncommissioned officer living aboard Marine Corps Base, Camp Pendleton, California. In October 2000, the appellant approached Ms. "E" (a 19–year–old civilian with no ties to the military) and Ms. E's friend, Ms. "V" (the 14–year–old stepdaughter of a Marine staff noncommissioned officer) near a small exchange on board the base. The appellant introduced himself and eventually befriended the two females.

The appellant had sexual intercourse with Ms. E at least five times during the month of October 2000.[2] On each such occasion, the

2. The court-martial order incorrectly notes 1–31 October **2001** as the relevant time period of the offense. Although the appellant was not prejudiced, he is entitled to have the record correctly

two would rendezvous at the appellant's base quarters while his wife and children were out of town. The appellant admitted that his conduct was service discrediting because "if a civilian person was aware that [he] as a Marine, a noncommissioned officer, was married and [was] having intercourse with [Ms. E] at [his] residence with [his] wife not being home or present, that ... might lower their opinion of the Marine Corps[.]" Record at 39. *See also* Prosecution Exhibit 1 at 1–2.

Approximately 4 months after his multiple trysts with Ms. E, the appellant invited the 14–year–old Ms. V back to his quarters, where the two had sexual intercourse. The following month (March 2001), he invited Corporal (Cpl) Daniel J. Villanueva to join him on a double date with Ms. E and Ms. V. The appellant and Cpl Villanueva ultimately intended to have sexual intercourse with the two females.

The appellant and Cpl Villanueva picked up the females and drove around before stopping in a parking lot near a local beach. The appellant had sexual intercourse with Ms. E in the back of his car while Cpl Villanueva and Ms. V waited nearby. When the appellant was done, Cpl Villanueva and Ms. V climbed in the car and had sexual intercourse.

In April 2001, the appellant's wife began to suspect his infidelity. In an effort to cover his tracks, the appellant called Ms. V on 21 April 2001, and urged her (if asked) to deny the acts described above.[3] Ms. V's mother taped this conversation.

Cpl Villanueva's wife also suspected her husband's infidelity, and both she and the appellant's wife placed telephone calls to the home of Ms. V and confronted her family. On 24 April 2001, the appellant and his wife began arguing in their quarters over the appellant's infidelity. The appellant's wife struck him in the head. The appellant responded by pushing his wife and punching her on the side of her head with his closed

fist. At some point, the police responded to the altercation.

Finally, on 21 May 2001, Naval Criminal Investigative Service Special Agent (SA) Kenneth Proffitt interviewed the appellant regarding his misconduct. SA Proffitt advised the appellant of his Article 31, UCMJ, 10 U.S.C. § 831, rights and then questioned him. During the interview, the appellant denied that he knew Ms. V or that he had ever had sex with her. He also denied going to the beach with Ms. V. SA Proffitt then played the recording of the appellant's telephone conversation with Ms. V, at which point the appellant corrected his false statement.

### Adultery

■ In his first assignment of error, the appellant asserts that his conviction for "private, consensual, heterosexual adultery with an adult [Ms. E]" violates the appellant's constitutional right to privacy. Appellant's Brief at 3. Specifically, he relies on the decision of the U.S. Supreme Court in *Lawrence*, which struck down a Texas statute that criminalized "same sex" sodomy. Finding that the case involved "two adults who, with full and mutual consent from each other, engaged in sexual practices common to a homosexual lifestyle," the Supreme Court concluded that the petitioners in *Lawrence* had a substantive due process right to "engage in their conduct without intervention of the government" because the Texas statute "further[ed] no legitimate state interest which [could] justify its intrusion into the personal and private life of the individual." *Lawrence*, 539 U.S. at 578, 123 S.Ct. 2472.

Following *Lawrence*, the Court of Appeals for the Armed Forces (CAAF) rejected a generalized constitutional attack on the military's sodomy statute (Article 125, UCMJ, 10 U.S.C. § 925). *United States v. Marcum*, 60 M.J. 198 (C.A.A.F.2004). Instead, CAAF determined that military courts must apply a contextual, "as-applied" analysis, to deter-

---

reflect the date of this offense. Accordingly, we will order corrective action in our decretal paragraph.

**3.** Despite his wife's suspicions, the appellant was unwilling to terminate his relationship with Ms.

V. Instead, he told Ms. V that she was not to contact him, but instead should wait for him to call her when he again wanted to have sexual intercourse.

mine if a prosecution under Article 125, UCMJ, passes constitutional muster. To that end, a court must consider three questions:

> First, was the conduct that the accused was found guilty of committing of a nature to bring it within the liberty interest identified by the Supreme Court? Second, did the conduct encompass any behavior or factors identified by the Supreme Court as outside the analysis in *Lawrence* ? Third, are there additional factors relevant solely in the military environment that affect the nature and reach of the *Lawrence* liberty interest?

*Id.* at 206–07 (internal citations omitted). *Accord United States v. Stirewalt,* 60 M.J. 297, 304 (C.A.A.F.2004).

The appellant contends that *Lawrence* extends a constitutional right of privacy to discreet consensual adultery with an adult "where there is no other legitimate government interest furthered by prosecuting this offense." Appellant's Brief at 5. We conclude that *Lawrence* does not shield the appellant's actions in this case and that the Government had a legitimate interest in prosecuting the appellant for his misconduct.

## I.

At the outset, we note that neither *Lawrence* nor *Marcum* expressly considered the constitutional validity of a criminal prosecution for adultery. The appellant, while acknowledging this fact, nevertheless seizes on language from Justice Scalia's dissenting opinion in *Lawrence:*

> State laws against bigamy, same-sex marriage, adult incest, prostitution, masturbation, *adultery,* fornication, bestiality, and obscenity are ... sustainable only in light of *Bowers*[4] validation of laws based on moral choices. Every single one of these laws is called into question by today's decision; the Court makes no effort to cabin

the scope of its decision to exclude them from its holding.

Appellant's Brief at 4–5 (quoting *Lawrence,* 539 U.S. at 590, 123 S.Ct. 2472 (Scalia, J., dissenting))(emphasis added).

Whatever the merit of Justice Scalia's views of the scope of the majority's holding in *Lawrence,* his opinion remains a dissent and, as such, does not bind us here. In this case, we do not consider a statute intended "to control a personal relationship that, whether or not entitled to formal recognition in the law, is within the liberty of persons to choose without being punished as criminals." *Lawrence,* 539 U.S. at 567, 123 S.Ct. 2472. What is at issue here is the legitimacy of the appellant's conviction for violating a criminal statute (i.e., adultery) whose primary purpose is to maintain good order and discipline within the service, while secondarily fostering the fundamental social institution of marriage.

We conclude that (*Lawrence* notwithstanding) such a prosecution remains constitutionally viable under Article 134, UCMJ, for it is there that we find sufficient constitutional limits on the Government's ability to prosecute a military accused for adultery.

## II.

Adultery is an enumerated offense under Article 134, UCMJ (the "General Article"), which requires proof of the following elements:

> (1) That the accused wrongfully had sexual intercourse with a certain person;
>
> (2) That, at the time, the accused or the other person was married to someone else; and
>
> (3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), Part IV, ¶ 62b.[5]

---

4. *Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986). In *Bowers,* the Court upheld the constitutionality of a Georgia statute making it a criminal offense to engage in sodomy. The Court's decision in *Lawrence* expressly overruled *Bowers.*

5. The President has further informed service members that a violation of this enumerated offense is punishable by up to one year of confinement, forfeiture of all pay and allowances, and a dishonorable discharge. MCM (2000 ed.), Part IV, ¶ 62e. Accordingly, the appellant can hardly

Thus, in every case of adultery, military prosecutors must satisfy the "terminal element" required for all prosecutions under clauses (1) or (2) of the General Article,[6] as well as prove wrongful sexual intercourse and the existence of a valid marriage.

Prosecutions under clauses (1) and (2) of Article 134, UCMJ, have survived constitutional attacks premised on vagueness or lack of notice that the particular conduct was unlawful. *See Parker v. Levy*, 417 U.S. 733, 755, 94 S.Ct. 2547, 41 L.Ed.2d 439, (1974). As we have previously explained, "[a]t the heart of the Court's reasoning in *Parker* is its observation that, although the statutory language itself is broad and vague, application of Article 134 has been limited by the President through the Manual for Courts–Martial, by the military appellate courts through case law, and by long established military custom and tradition to behavior that is easily recognized by service members as subject to punitive sanction." *United States v. Peszynski*, 40 M.J. 874, 879 (N.M.C.M.R.1994)(citing *Parker*, 417 U.S. at 752–54, 94 S.Ct. 2547).

Because the President has imposed specific limits on the prosecution of such offenses, we agree with the appellant that not every instance of adultery is a criminal offense under military law. Instead, as the 2005 edition of the MCM states, "[t]o constitute an offense under the UCMJ, the adulterous conduct must either be directly prejudicial to good order and discipline or service discrediting." MCM (2005 ed.), Part IV, ¶ 62c(2).[7]

To satisfy the prejudice prong of this terminal element, the offense must have a significant effect on unit or organizational discipline, morale or cohesion, or be "clearly detrimental to the authority or stature of or

respect toward a service member." *Id.* On the other hand, "service discrediting" conduct is punishable when it "has a tendency . . . to bring the service into disrepute . . . or lower it in public esteem." *Id.*

Moreover, there is no requirement that the Government show actual damage to the reputation of the military. *Cf. United States v. Hartwig*, 39 M.J. 125, 130 (C.M.A.1994)(holding that in context of Article 133, UCMJ, 10 U.S.C. § 933, violation for officer's delivery of sexually lurid letter to child of tender years, prosecution need not prove actual damage to the reputation of the military). Rather, the test is whether the appellant's offense had a "tendency" to bring discredit upon the service. *United States v. Saunders*, 59 M.J. 1, 11 (C.A.A.F.2003); *Hartwig*, 39 M.J. at 130.

In determining whether an adulterous act is contrary to good order and discipline or service discrediting, the 2005 edition of the MCM counsels commanders to consider a list of non-exclusive factors, which include, in relevant part: (1) the military rank, grade or position of the accused and his co-actor; (2) the military status (if any) of the accused's or co-actor's spouse; (3) the impact, if any, of the offense on the ability of the accused or the co-actor to perform their military duties; (4) the misuse, if any, of government time and resources to facilitate the crime; (5) the flagrancy of the act and whether any notoriety ensued; (6) whether the offense was accompanied by other violations of the UCMJ; (7) the negative impact of the conduct on the affected units; and (8) whether the accused or co-actor was legally separated. MCM (2005 ed.), Part IV, ¶ 62c(2)(a)-(i).

After considering the relevant legal principles, we believe that the appellant's conduct

---

claim that he lacked sufficient notice of the criminal sanctions that could attach to his actions.

6. Article 134, UCMJ, makes punishable acts in three categories of offenses (referred to as clauses 1, 2 and 3) not specifically covered by other articles of the Code. We deal here with an offense (i.e. adultery) punishable either because the misconduct was to the prejudice of good order and discipline in the armed forces (a clause 1 offense) or was of a nature to bring discredit upon the armed forces (a clause 2 offense).

7. We recognize that the expanded definitions and explanations for this offense found in the current *MCM did not exist* at the time of the appellant's court-martial. Nevertheless, since the critical question is whether the relevant statute is constitutional as applied to the appellant's conduct, we see no reason why we cannot consider subsequent Presidential guidance on the limits of an adultery prosecution under Article 134, UCMJ.

as alleged in Specification 1 of Charge III satisfies both prongs of the Article 134 terminal element.

## III.

The appellant forthrightly concedes his criminal culpability as to two of the three specifications of adultery under Charge III. Indeed, there is little doubt that a 23–year–old married Marine noncommissioned officer is guilty of service discrediting conduct when he (a) has sexual intercourse in his base quarters with the 14–year–old stepdaughter of a fellow Marine;[8] and (b) then brings that same child to the parking lot of a public beach, where he has sexual intercourse with another female in the back seat of his car while another married Marine noncommissioned officer and the child wait their turn.

The appellant, however, contends that the specific acts alleged in Specification 1 of Charge III (that is, his five or more adulterous liaisons with the 19–year–old Ms. E consummated in the appellant's base quarters) were not sufficiently "open or notorious" so as to be service discrediting. According to the appellant, his actions involved "no additional service discrediting conduct outside the private, consensual, sexual relations between [the a]ppellant and Ms. [E]." Appellant's Brief at 5. We disagree.

While the appellant's argument appears inviting, it is premised on a careful (but fatal) parsing of the challenged specification from the balance of the appellant's misconduct. We do not, however, consider the appellant's actions in a vacuum. Instead, consistent with MCM (2005 ed.), Part IV, ¶ 62c(2)(a)-(i), we note the following aggravating factors supporting the appellant's conviction of the challenged offense:

(1) the appellant was a Marine noncommissioned officer who was not legally separated from his wife. *See United States v. Thompson,* 22 M.J. 40, 41 (C.M.A.1986) (stating that noncommissioned officers, by virtue of their rank and authority, have the responsibility to maintain high personal standards of conduct);

(2) the appellant committed his adulterous acts with Ms. E in his quarters on board a military installation. *Cf. United States v. Green,* 39 M.J. 606 (A.C.M.R.1994)(holding adultery was prejudicial to good order and discipline when it occurred in the barracks where other soldiers could see or find out about it);

(3) as a result of his initial encounter with Ms. E and Ms. V, the appellant fostered a relationship with the 14–year–old Ms. V and ultimately had sexual intercourse with her in his base quarters;

(4) the appellant then enticed Cpl Villanueva (another married Marine noncommissioned officer) to commit adultery with that same child;

(5) the appellant committed a separate act of adultery with Ms. E in the back seat of his car in the parking lot of a local beach while Cpl Villanueva and the 14–year–old Ms. V waited their turn;

(6) the appellant was intent on persisting in his misconduct, even after being discovered by his wife;

(7) the appellant's misconduct did not remain private and discreet, but instead led to several telephone confrontations between the aggrieved wives and the family of Ms. V, as well as a physical altercation between the appellant and his wife that required police intervention; and

(8) to cover up his offenses, the appellant convinced Ms. V to lie for him, and then compounded his culpability by lying to a criminal investigator about his actions. *See United States v. Collier,* 36 M.J. 501, 512 (A.F.C.M.R.1992)(holding adulterous conduct which provides incentive to commit further offenses is service discrediting and prejudicial to good order and discipline).

In light of the above, we conclude that the entire course of the appellant's conduct, including his initial trysts with Ms. E, was

---

**8.** Given Ms. V's tender age, the appellant could have been charged with carnal knowledge, an offense punishable by up to 20 years of confinement. MCM (2000 ed.), Part. IV, ¶ 45e(2).

demonstrably prejudicial to good order and discipline, as well as service discrediting. Indeed, we have little doubt that the general public would think less of a military service whose noncommissioned officers are free to engage in multiple acts of adultery on board a military installation, which ultimately lead to separate acts of adultery with a 14–year–old child and the commission of various other offenses.

During the providence inquiry, the appellant had little trouble admitting guilt to the specification that he now challenges on appeal. In the absence of any facts contradicting the appellant's admission, "[w]e will not allow [the] appellant to throw a penalty flag and prevail after he has admitted on the record to each element of the charged offense[.]" *United States v. Russell,* 50 M.J. 99, 100 (C.A.A.F.1999).

We find that the appellant's conviction for adultery under Specification 1 of Charge III is consistent with the limiting principles for prosecuting such offenses under Article 134. We further find that the appellant's guilty plea to that offense is otherwise factually and legally sufficient.

### IV.

The Supreme Court's holding in *Lawrence* does not alter this result. Even assuming *arguendo* that the appellant's adulterous activity is within the *Lawrence* liberty interest and does not otherwise meet any exception specifically listed in *Lawrence,* we nonetheless conclude that there are additional factors in this case that weigh against constitutional protection.

We have already found that the appellant's conduct was both prejudicial to good order and discipline and service discrediting. That alone is sufficient to remove the conduct from the protection of the Constitution. Moreover, the military has a particular interest in promoting the preservation of marriages within its ranks. Because military families are often required to endure extended separations from a spouse due to operational commitments, commanders have a unique responsibility to ensure that the morale of their deployed personnel (and that of the spouses

left behind) is not adversely affected by concerns over the integrity of their marriages.

In sum, we are satisfied that the appellant's misconduct is not constitutionally protected. Consistent with both *Lawrence* and *Marcum,* we conclude that the General Article imposes a sufficient constitutional limit on the Government's ability to prosecute a military accused for adultery and that the appellant's prosecution and subsequent guilty plea comport with that limit. Accordingly, we reject the appellant's assigned error.

### False Official Statement

The appellant's second assignment of error focuses on the providence of his plea to making a false official statement. According to the appellant, existing case law on this offense "leaves open the possibility that there is an 'exculpatory no' exception where military commanders are not misled[,] no misinformation affects the mission" and where "the military member, in the same interrogation, only moments after making the alleged false statement, corrects his prior false statement[.]" Appellant's Brief at 7 (citing *United States v. Solis,* 46 M.J. 31, 34 (C.A.A.F. 1997)). We disagree.

There are four elements that must be proved to obtain a conviction under Article 107, UCMJ, for a false official statement. They are:

1) That the accused ... made a certain official statement;

2) That the ... statement was false in certain particulars;

3) That the accused knew it to be false at the time of ... making it; and

4) That the false ... statement was made with the intent to deceive.

MCM (2000 ed.), Part IV, ¶ 31b. As the appellant himself acknowledges, neither the Manual nor the cases provide support for his claim that his conduct should be immune from prosecution under Article 107, UCMJ.

In this case, the appellant admitted during the plea colloquy that: (a) he made an oral statement to SA Proffitt; (b) the statement was official in the sense that he was being questioned as part of a criminal investigation; (c) the statement that he gave was false in certain particulars in that he denied knowing

Ms. V or having sexual intercourse with her; (d) the appellant knew it to be false when he gave it; and (e) he made the statement with the intent to deceive SA Proffitt. Moreover, although the appellant ultimately retracted his false statement and admitted his criminal acts, he did so only after he was confronted with a recorded conversation that impugned his earlier denials.

"When an individual subject to the Code makes an official statement with intent to deceive and with knowledge that the statement is false, that person may be convicted under the plain language of Article 107." *Solis*, 46 M.J. at 33. We find no basis for deviating from well-settled law by adopting the appellant's proposed exception to the prosecution of Article 107, UCMJ, offenses.

In our view, whether and when to prosecute a service member for a false official statement that he later retracts is best left to the discretion of the convening authority, who can more appropriately gauge the harmful effect (if any) of the statement on the unit's mission or the investigative process. Finally, we are confident, as was the case here, that military judges or members can properly consider an accused's retraction of a false statement as a matter in extenuation when deliberating on an appropriate sentence. Accordingly, we decline to grant relief.

### Conclusion

After thoroughly considering the record of trial and the issues raised and briefed by the appellant, we affirm the findings and the sentence, as approved by the convening authority. We direct that a supplemental court-martial order be issued to correct the date of the offense under the first specification of Charge III.

Senior Judge CARVER and Judge WAGNER concur.