# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, K.M. MCDONALD, D.C. KING**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

**v.**

**JOHN M. HENDERSON**
**SERGEANT (E-5), U.S. MARINE CORPS**

**NMCCA 201400216**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 4 December 2013.
**Military Judge:** LtCol N.K. Hudspeth, USMC.
**Convening Authority:** Commanding General, 2d Marine Aircraft Wing, Cherry Point, NC.
**Staff Judge Advocate's Recommendation:** LtCol J.J. Murphy, USMC.
**For Appellant:** Capt Michael Magee, USMC.
**For Appellee:** CDR Christopher Van Brackel, JAGC, USN; LT Ann Dingle, JAGC, USN.

**27 May 2015**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge, sitting as a general court-martial, convicted the appellant, contrary to his pleas, of one specification of adultery, in violation of Article 134, Uniform

Code of Military Justice, 10 U.S.C. § 934.[1]  The appellant was sentenced to reduction to pay grade E-3 and a bad-conduct discharge.  The convening authority approved the sentenced as adjudged.

On appeal, the appellant raises two assignments of error (AOE):  (1) that the evidence presented at trial is legally and factually insufficient to convict him for adultery; and (2) that the appellant's sentence was inappropriately severe.  After careful consideration of the record of trial and the parties' pleadings, we conclude that the findings are correct in law and fact but that the sentence is inappropriately severe.  Arts. 59(a) and 66(c), UCMJ.

**Background**

Mrs. AL (AL) was married to a Marine Sergeant (Sgt) and lived in base housing at Camp Lejeune, North Carolina.  On 17 March 2012, while her husband was out of town at a NASCAR event, AL invited Mrs. C and several others to her housing unit for a party.  Mrs. C's husband was also a Marine Sgt in the same unit as AL's husband.  After drinking heavily, AL left her party and went to a neighbor's house party where she met the appellant.

The appellant was also married, but had separated from his wife two years prior to this incident.[2]  AL invited the appellant, another female (Mrs. B), and the appellant's male friend Corporal (Cpl) D back to the party at her house to play a drinking game.  All three accepted and the drinking continued at AL's home.

Eventually, the appellant and AL began kissing each other on AL's couch.  The amorous activity continued until AL fell asleep, after which the appellant and Mrs. C took AL to an upstairs bedroom and placed her in the bed.  As the sun came up, everyone but AL and the appellant left AL's home to help clean up a neighboring yard.  The appellant testified that he then went to AL's bedroom, woke her up, and asked AL if she "still want[ed] to have sex."[3]  He stated that AL responded in the

---

[1] The appellant was acquitted of one specification each of aggravated sexual assault and assault consummated by a battery under Articles 120 and 128, UCMJ, 10 U.S.C. §§ 920 and 928.

[2] It is not clear from the record whether the separation was legal or simply de facto.

[3] Record at 277.

2

affirmative and the two began to engage in intercourse, during which the appellant testified AL was conscious, responsive and an active participant. The appellant's version of events is supported by the testimony of Cpl D and Mrs. C. Cpl D witnessed the appellant and AL engaged in consensual sexual activity and Mrs. C testified that she heard AL making comments that can only be interpreted as indicative of consensual sexual activity.

Later, when the appellant came downstairs he described to Cpl D in graphic detail the sexual activity with AL in which he had just engaged. Mrs. C overheard this conversation and concluded that the appellant was "a giant douche bag."[4]

The parties then departed AL's home, Mrs. C being picked up by her husband. As she and her husband were returning home, Mrs. C told her husband what had transpired and her husband decided to turn the car around so Mrs. C could check on AL. When Mrs. C confronted AL with the fact that she had engaged in sexual intercourse with the appellant, AL claimed to not remember what took place and stated she wanted to report the interaction as a rape. Mrs. C took AL to the local hospital where AL underwent a sexual assault examination. The appellant's court-martial ensued.

The Government charged the appellant with sexually assaulting AL by having intercourse with her while she was "substantially incapacitated." Additionally, the appellant was charged with committing adultery by "wrongfully having sexual intercourse with [AL], a married woman not his wife, and that under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces."

At trial, the defense moved the court to dismiss the adultery specification under Rule for Court Martial 917, Manual for Courts-Martial, United States (2012 ed.). In opposing the motion, the trial counsel argued: "this happened in base housing[;] . . . the [appellant] is a married active duty . . . Marine; that the reported victim was a married dependent of an active duty Marine living in base housing; and other members of the party . . . who were present and witnessed this happen knew that [AL] was married to an active duty Marine."[5] The motion was denied and, in referring to the adultery during his closing argument,

---

[4] *Id.* at 171.

[5] *Id.* at 250-51.

3

the trial counsel stated simply: "He . . . had sex with her . .
. while he was married and she was married.  For those reasons,
we ask that you find him guilty [of adultery.]"[6]  The military
judge did so.[7]

## Discussion

In his first AOE the appellant contends that the evidence
is legally and factually insufficient to establish that he
committed the offense of adultery.  Specifically, he argues that
the Government failed to offer any evidence that the appellant's
adulterous conduct was directly prejudicial to good order and
discipline or service discrediting.

The test for legal sufficiency of the evidence is
"'whether, after viewing the evidence in the light most
favorable to the prosecution, any rational trier of fact could
have found the essential elements of the crime beyond a
reasonable doubt.'" *United States v. Oliver*, 70 M.J. 64, 68
(C.A.A.F. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319
(1979)).  In resolving questions of legal sufficiency, "we are
bound to draw every reasonable inference from the evidence of
record in favor of the prosecution."  *United States v. Barner*,
56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is whether, after weighing
the evidence in the record of trial and making allowances for
not having personally observed the witnesses, this court is
convinced of the accused's guilt beyond a reasonable doubt.
*United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).  "Such
a review involves a fresh, impartial look at the evidence,
giving no deference to the decision of the trial court . . .
beyond the admonition in Article 66(c), UCMJ, to take into
account the fact that the trial court saw and heard the
witnesses."  *United States v. Washington*, 57 M.J. 394, 399
(C.A.A.F. 2002).

To secure a conviction for adultery under Article 134,
UCMJ, the Government must prove that: (1) the accused wrongfully
had sexual intercourse with a certain person; (2) at the time,
the accused or the other person was married to someone else; and
(3) under the circumstances, the accused's conduct was to the
prejudice of good order and discipline in the armed forces or

---

[6] *Id.* at 335.

[7] After deliberating in place, the military judge acquitted the appellant of
the battery and sexual assault offenses.

4

was of a nature to bring discredit upon the armed forces.  MANUAL FOR COURTS-MARTIAL(2012 ed.), Part IV, ¶ 62(b).

The appellant does not challenge the evidence as it relates to the first or second elements cited above and we find the evidence as to those two elements sufficient.  Instead, our review focuses on the terminal element.  At the outset we note that "[a]n accused cannot be convicted under Article 134 if the trier of fact determines only that the accused committed adultery; the trier of fact must also determine beyond a reasonable doubt that the terminal element has been satisfied." *United States v. Fosler*, 70 M.J. 225, 230 (C.A.A.F. 2011) (citation omitted).

Prior to 2002, the MCM explanation of the terminal element of adultery -- that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces -- defaulted to the general explanation applicable to all offenses under Article 134.  MCM (2000 ed.), Part IV, ¶¶ 60c and 62c.  Thus, as with other Article 134 offenses, "to the prejudice of good order and discipline" referred "only to acts directly prejudicial to good order and discipline and not to acts which are prejudicial only in a remote or indirect sense[,]" *id*. at ¶ 60 c(2)(a), while "of a nature to bring discredit upon the armed forces" was "conduct which has a tendency to bring the service into disrepute or which tends to lower it in public esteem[,]" *id*. at ¶ 60c(3).

However, Executive Order 13,262, 67 Fed. Reg. 18773, 18778 (Apr. 17, 2002), amended the MCM to create a separate explanation of the terminal element unique to adultery offenses.  Since then, the MCM provides, "Adulterous conduct that is directly prejudicial to good order and discipline includes conduct that has an obvious, and measurably divisive effect on unit or organization discipline, morale, or cohesion, or is clearly detrimental to the authority or stature of or respect toward a servicemember."  MCM (2012 ed.), Part IV, ¶ 62c(2). "Discredit means to injure the reputation of the armed forces and includes adulterous conduct that has a tendency, because of its open or notorious nature, to bring the service into disrepute, make it subject to public ridicule, or lower it in public esteem."  *Id*.  The explanation then provides a non-exhaustive list of factors to consider when determining whether

5

adulterous acts are prejudicial to good order and discipline and/or service discrediting.[8]

We agree with our sister court that this new explanation operated to narrow the scope of adultery as an offense under the UCMJ. *See United States v. Jonsson*, 67 M.J. 624, 626 (C.G.Ct.Crim.App. 2009) (citing, Joint Annual Report of the Code Committee Pursuant to the Uniform Code of Military Justice (October 1, 2002 to September 30, 2002), *reprinted at* 59 M.J. LXXIII (2004)). *See also United States v. Orellana*, 62 M.J. 595, 599 (N.M.Ct.Crim.App. 2005); *United States v. Jones*, No. 20090900, 2012 CCA LEXIS 250, unpublished op. (Army Ct.Crim.App. 10 Jul 2012); *United States v. Jones*, No. 20090401, 2011 CCA LEXIS 403, unpublished op. (Army Ct.Crim.App. 14 Dec 2011). Therefore, in order to satisfy the terminal element of adultery, the Government must prove either that the adulterous conduct had "an obvious, and measurably divisive effect on unit or organization discipline, morale, or cohesion, or is clearly detrimental to the authority or stature of or respect toward a servicemember[,]" or that the adulterous conduct was sufficiently "open or notorious" to have a tendency to "bring the service into disrepute, make it subject to public ridicule, or lower it in public esteem." MCM (2012 ed.), Part IV, ¶ 62c(2). We find sufficient evidence to conclude the finding of guilt was both legally and factually sufficient for both clauses of the terminal element.

### Prejudicial to Good Order and Discipline

The appellant now argues that, since there was no evidence of "direct and palpable" injury to good order and discipline, the Government failed to prove clause 1 of the terminal element. We disagree. Paragraph 62 describes clause 1 offenses as those that have either have "an obvious, and measurably divisive effect on unit or organization discipline, morale, or cohesion," *or* are "clearly detrimental to the authority or stature of or

---

[8] These factors are: (a)the accused's marital status; (b)the co-actor's marital status; (c)the military status of the accused's or co-actor's spouse; (d)the impact, if any of the adulterous relationship on the ability of the accused , the co-actor, or the spouse of either to perform their duties in support of the armed forces; (e) the misuse of government time and resources to facilitate the commission of the conduct; (f) whether the conduct persisted despite counseling or orders to desist, the flagrancy of the conduct, such as whether any notoriety ensued; (g) the negative impact of the conduct on the unit or organization of the accused; (h) whether the accused or co actor was legally separated; and (i) whether the adulterous misconduct involves an ongoing or recent relationship or is remote in time. MCM (2012 ed.), Part IV, ¶ 62c(2).

respect toward a servicemember."  While we agree that evidence of an "obvious, and measurably divisive effect" was lacking, we find the evidence sufficient to establish that the misconduct was "clearly detrimental to the authority or stature of or respect towards" the appellant.

The appellant was a noncommissioned officer senior to Cpl C when he engaged in this conduct.  Not only did the appellant perform the adulterous act in base housing, he did so in the presence of his junior, Cpl C.  *See Orellana*, 62 M.J. at 600 (adultery prejudicial to good order and discipline when, inter alia, it occurred in quarters on board military installation).  Moreover, only moments later the appellant recounted -- in graphic detail -- his misdeed to Cpl C.  While we recognize that Cpl C may have been engaged in similar misconduct, that fact does not detract from our conclusion that the appellant's misdeed was "clearly detrimental to the authority or stature of or respect towards" the appellant.  The appellant was a Marine noncommissioned officer who engaged in sexual activity with the wife of another Marine noncommissioned officer in that man's home.  *See id.* ("noncommissioned officers, by virtue of their rank and authority, have the responsibility to maintain high personal standards of conduct").  This evidence is factually and legally sufficient to support a conviction for a clause 1 offense.[9]

### Service Discrediting

We also find the appellant's misconduct to be service discrediting.  "Whether conduct is of a 'nature' to bring discredit upon the armed forces is a question that depends on the facts and circumstances of the conduct, which includes facts regarding the setting as well as the extent to which Appellant's conduct is known to others.  The trier of fact must consider all the circumstances, but such facts, -- including the fact that the conduct may have been wholly private -- do not mandate a particular result unless no rational trier of fact could conclude that the conduct was of a 'nature' to bring discredit upon the armed forces."  *United States v. Phillips*, 70 M.J. 161, 166 (C.A.A.F. 2011).  The appellant argues that there is "an

---

[9] We echo the admonition of the Court of Appeals for the Armed Forces that trial counsel should endeavor to make its theory of discredit or prejudice apparent during opening and closing arguments.  Omitting any mention of evidence relevant to the terminal element is not a best practice.  See *United States v. Norman*, ___ M.J. ___ , No. 14-0524, slip op. at 22 n.5, (C.A.A.F. Apr. 29, 2015.)

7

absolute void of any evidence that any member of the general public was aware of the encounter[,] [o]r that the encounter even occurred under such circumstances that the general public may become aware."[10]  Further, the appellant contends that service discrediting conduct requires proof that "the conduct is of such a serious nature that it damages the entire service."[11] We disagree.

While we acknowledge that Paragraph 62 cautions that adulterous conduct that is "private and discreet in nature may not be service discrediting," appellant's implicit argument that his intercourse with AL matches this description ignores the facts.  Not only was the appellant's conduct known to Cpl C and Mrs. C, the appellant boasted about it afterwards.  We also reject the appellant's contention that a conviction requires evidence that a member of the general public be aware of the adulterous conduct.  *Phillips,* 70 M.J. at 166 ("In general the government is not required to present evidence that anyone witnessed or became aware of the conduct.").  *See also Orellana*, 62 M.J. at 599 ("there is no requirement that the Government show actual damage to the reputation of the military.").

Instead, the Government must show that the misconduct be sufficiently "open or notorious" that it "has a tendency" to "bring the service into disrepute, make it subject to public ridicule, or lower it in public esteem."  MCM (2012 ed.), Part IV, ¶ 62c(2).  We find that a Marine noncommissioned officer, engaging in adulterous conduct in military housing, in the presence of a junior, who then shares his exploit such that others are aware of the misconduct, satisfies this requirement. Accordingly, the appellant's conviction for adultery is consistent with the limiting principles for prosecuting such offenses under Article 134.

Considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found that all the essential elements were proven beyond a reasonable doubt. Additionally, weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this Court is itself convinced of the accused's guilt beyond a reasonable doubt.

---

[10] Appellant's Reply Brief of 21 Oct 2014 at 3-4.

[11] *Id*. at 4.

8

**Sentence Appropriateness**

Finally, the appellant argues that a bad-conduct discharge is excessive and inappropriate given the facts of his case. In accordance with Article 66(c), UCMJ, this court "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Determining sentence appropriateness "involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This requires "'[i]ndividualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)).

During the sentencing hearing, the Government admitted the appellant's service record book, which contained no derogatory information, and then rested its case. The trial counsel then argued for a sentence of reduction to E-3, 60 days restriction, and forfeitures of two-thirds pay per month for two months. The Government did not request a bad-conduct discharge.

In mitigation, the defense admitted evidence that the appellant had offered to accept responsibility and plead guilty to adultery at an Article 15 hearing over a year earlier. The record also indicates the appellant had been on active duty for over seven years at the time of his court-martial, was an Avionics Technician on the V22 (OSPREY) who had deployed to Afghanistan and had earned a proficiency and conduct average of 4.5 out of 5.0.

The defense then argued that a sentence for deterrence purposes was unnecessary: "[he was] accused of rape. For two years this has hung over his head and anyone who knows him and has talked to him over the last two years knows exactly how painful this has been for him."[12] In arguing for an appropriate sentence, the defense counsel stated, "If the court is firm and fair, it will award no more than a letter of reprimand and reduction to Corporal."[13]

---

[12] Record at 351.

[13] *Id.*

In light of the fact that the Government offered no evidence that would aggravate the adultery beyond the act itself, we are left with an otherwise proficient, above-average Marine who had served otherwise honorably for seven years. Therefore, on this record, we are not persuaded that a bad-conduct discharge, awarded at a general court marital, is an appropriate sentence that "should be approved" for this offender.

## Conclusion

We affirm the finding of guilty and only so much of the sentence extending to reduction to pay grade E3.

For the Court

R.H. TROIDL
Clerk of Court